**COUNTY BOARD OF EQUALIZATION OF WASATCH COUNTY, State of Utah, Petitioner,**

v.

**UTAH STATE TAX COMMISSION and the Strawberry Water Users Association, Respondents.**

No. 960394.

Supreme Court of Utah.

Aug. 29, 1997.

Dan H. Matthews, Derek Pullan, Heber City, for Wasatch County Board of Equalization.

Jan Graham, Atty.Gen., John C. McCarrey, Asst.Atty.Gen., Salt Lake City, for Tax Commission.

Rex E. Madsen, Reed L. Martineau, Salt Lake City, for Strawberry Water Users Association.

DURHAM, Justice:

The Wasatch County Board of Equalization (Wasatch County or the County) sought to impose a tax on the Strawberry Water Users Association (the Water Users Association) pursuant to the "rollback" provisions of the Farmland Assessment Act. The Water Users Association appealed the County's assessment to the Utah State Tax Commission (the Tax Commission), which granted its petition for summary judgment and ordered the County to withdraw the assessment. Wasatch County petitioned this court for review of the Tax Commission's order, which we affirm.

Until 1989, the Water Users Association held the land use rights to federal property surrounding Strawberry Reservoir. Pursuant to a contract with the United States government, the Water Users Association used the land for grazing and other purposes. Although it was not the owner of the land, the Association paid a "privilege tax" to Wasatch County in connection with its use of the federal land. The privilege tax is a tax "imposed on the possession or other beneficial use enjoyed by any person of any real or personal property which [like the federal land involved in this litigation] ... is exempt from taxation." Utah Code Ann. § 59–4–101(1)(a). The amount of the privilege tax "is the same amount that the ad valorem property tax would be if the possessor or user were the owner of the property." *Id.* § 59–4–101(2).

In 1972, the Water Users Association applied for and was granted a farmland or "greenbelt" assessment on the value of the property under the Farmland Assessment Act, Utah Code Ann. §§ 59–2–501 to –515 (1992).[1] That chapter permits certain property used for agriculture, including "[l]and which is subject to the privilege tax," *id.* § 59–2–503(2), to be assessed for general tax purposes based on "the value which the land has for agricultural use," rather than on the land's fair market value. *Id.* § 59–2–503(1). This agricultural use valuation results in a substantial tax savings to the landowner or, as in this case, the land user. However, the act also provides that "[i]f land which ... has been in agricultural use ... is applied to a use other than agricultural, ... it is subject to an additional tax referred to as the 'rollback tax.'" *Id.* § 59–2–506(1). The rollback tax amounts to "the difference between the tax paid while the land was valued under [the Farmland Assessment Act], and that which would have been paid had the property not been valued under this part." *Id.* § 59–2–506(4).

In 1989, the Water Users Association was forced by the passage of a federal statute to relinquish its land use rights to the United States government, which paid the Association fifteen million dollars to be released from the contract. The Wasatch County assessor took the position that agricultural use

---

1. This section was amended in 1992. The amendments, which became effective on January 1, 1993, do not affect the present action.

ceased after 1989 and sought to impose the rollback tax on the Association for the previous five years. The Water Users Association appealed to the County, which affirmed the tax. The Association then appealed to the state Tax Commission, which held as a matter of law that "the rollback tax could not apply to the privilege tax because by definition the underlying property is owned by a tax exempt organization [i.e., the United States government]."

During discovery before the Tax Commission, the Water Users Association withheld certain documents from Wasatch County, claiming that the materials were protected from discovery under the work product doctrine and the attorney-client privilege. The County filed a motion to compel discovery of the withheld material, which the Tax Commission denied.

The County now seeks review of the decision of the Tax Commission on both issues, arguing (1) that the rollback tax may be imposed on all land that ceases to be used for agricultural purposes, including tax-exempt land whose use is subject to the privilege tax, and (2) that there was inadequate evidence to support the Association's claims of attorney-client and work product privileges for materials withheld from discovery. Because we conclude that the rollback tax does not apply to the use or possession of land taxed under the privilege tax, we need not reach the discovery question.

The controversy in this case stems from an apparent inconsistency in the tax laws. Section 59–4–101(1) (1992) of the Utah Code describes the application of the privilege tax:

[A] tax is imposed *on the possession or other beneficial use* enjoyed by any person of any real or personal property which for any reason is exempt from taxation, if that property is used in connection with a business conducted for profit.

(Emphasis added.) By the plain language of this statute, the tax is imposed not on the land (which by definition is tax exempt), but on the possession or use of the land. Payers of the privilege tax who have been using the land for agricultural purposes and then cease to use it for those purposes apparently escape imposition of the rollback tax under

section –506 of the Farmland Assessment Act because it is imposed on "*land* which is or has been in agricultural use." *Id.* § 59–2–506(1) (emphasis added). However, section 59–2–503(2) of the same Act, in applying the greenbelt assessment to the privilege tax, seems to describe the privilege tax as a tax on land: "*Land which ... is subject to the privilege tax* imposed by § 59–4–101 ... is eligible for assessment based on its agricultural value." This section implies that the privilege tax is imposed on land, not merely on its use or possession, and that the rollback tax, which applies to all "land ... valued, assessed, and taxed" under the Farmland Assessment Act, *id.* § 59–2–506(1), may therefore be imposed on lands for which a privilege tax has been paid.

The County proposes that the inconsistency in these statutes should be reconciled by reading the word "land," as used in the Farmland Assessment Act, to mean both land in its usual sense and also the "use of land." In support of its interpretation, the County argues that because the privilege tax is assessed in the same amount and collected in the same way as a tax on land, the legislature's intent must have been to treat both taxes the same for all purposes. The County also argues that it is inconsistent and unfair to impose the rollback tax on landowners but not on land users. Finally, the County characterizes the agricultural assessment as a tax exemption and argues that courts must construe tax exemption statutes strictly against the party claiming exemption and that all ambiguities are construed in favor of taxation. *See Morton Int'l, Inc. v. Auditing Div.,* 814 P.2d 581, 591 (Utah 1991); *accord Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980).

■ The Association argues that the two statutes may be reconciled by reading the words "subject to" in section 59–2–503 to mean "affected by," thus rendering the meaning of that statute something equivalent to "[l]and which ... is 'affected by' the privilege tax imposed by section 59–4–101 ... is eligible for assessment based on its agricultural value." This phrasing would more accurately describe the relationship between the privilege tax and the tax-exempt lands

whose use is being taxed. Furthermore, "affected by" is one acceptable meaning ·of "subject to," which is defined as "[l]iable, subordinate, subservient, inferior, obedient to; *governed or affected by,* provided that, provided, answerable for." *Black's Law Dictionary* 1425 (6th ed.1990) (emphasis added). But the usual understanding of what it means to be subject to a tax is not that the subject person is merely governed or affected by the tax, but that he or she is liable for it and ultimately has to pay it. And as the County points out, taking the words "subject to" to mean merely "affected by" does not give those words a meaning that can be applied consistently throughout the statute. While neither the County's nor the Water Users Association's reading is completely satisfactory, we nevertheless find the Association's approach more persuasive and consistent with the statute's language and purpose.

■■■ In attempting to give effect to the intent of the legislature, a court must "look first to the plain language of the statute." *Johnson v. Redevelopment Agency,* 913 P.2d 723, 727 (Utah 1995). The plain language of section 59–2–506, the section that actually imposes the rollback tax, indicates that the land, not the land user, is subject to the tax. In construing a statute, a court must assume that " 'each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.' " *Carlie v. Morgan,* 922 P.2d 1, 4 (Utah 1996) (quoting *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991)). We therefore assume that the legislature used the word "land" advisedly and that if the legislature had wanted to apply the rollback tax to land users paying a privilege tax, it would have indicated as much by stating that "land *and land use* . . . are subject to an additional tax referred to as the 'rollback tax.' " Furthermore, a literal reading of section 59–2–503, upon which the County places so much weight, would be "unreasonably confused or inoperable" because it would require a finding that "[l]and . . . is subject to the privilege tax," when the privilege tax by definition applies to the use of lands that are otherwise exempt from taxation.

Policy considerations also support the interpretation urged by the Association and the Tax Commission. As noted above, neither party's conception of this tax scheme is without difficulty. The County points ·out that a distinction between landowners and land users is arbitrary and unfair because, if the rollback tax applies only to landowners, a long-term user or possessor could change the use before the end of the lease or contract and thus benefit from a more profitable non-agricultural use while avoiding the rollback tax. This construction would place a land user or possessor in a more advantageous position than an owner and would contravene the stated purpose of the privilege tax, which is to "close any gaps in the tax laws," *Great Salt Lake Minerals & Chems. Corp. v. State Tax Comm'n,* 573 P.2d 337, 339 (Utah 1977).

However, in this case the County's position would tax the Water Users Association as a result of decisions made by the federal government after the Association relinquished its rights in the property. It may be true, as the County points out, that a long-term user or possessor of land could benefit from taking the land out of agricultural use without incurring the rollback tax, but this potential loophole presents a lesser evil than the imposition of a tax burden on a former user or possessor of property for use decisions made by the property owner after the use period terminates. This consideration has particular force in this case, where the passage of a federal statute forced the Association to relinquish its use rights.

■■■ Finally, the County's argument that we must construe the Farmland Assessment Act narrowly and in favor of taxation is inapposite. The rule applies only in construing a tax exemption, and while the County argues that the Farmland Assessment Act is a tax exemption because it provides for "preferential tax treatment," we are persuaded that the Farmland Assessment Act, in particular that portion of the act imposing the rollback tax, is not an exemption but a tax imposition statute. This is evident from the language of section 59–2–506 wherein the legislature calls the rollback tax "an additional tax." It is an established rule in the construction of tax statutes that if any doubt

exists as to the meaning of the statute, "our practice is to construe taxation. statutes liberally in favor of the taxpayer, leaving it to the legislature to clarify an intent to be more restrictive if such intent exists." *Salt Lake County v. State Tax Comm'n,* 779 P.2d 1131, 1132 (Utah 1989). We therefore resolve the ambiguities in the present tax statute in favor of the taxpayer. The order of the Tax Commission is affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM's opinion.