STATE of Utah, Plaintiff and Appellant,

v.

James REDD and Jeanne Redd,
Defendants and Appellees.

No. 970275–CA.

Court of Appeals of Utah.

Feb. 20, 1998.

Rehearing Denied April 16, 1998.

Jan Graham and Joanne C. Slotnik, Salt Lake City, and William L. Benge, Moab, for Plaintiff and Appellant.

William L. Schultz, Moab and Rod W. Snow, Denver, CO, for Defendants and Appellees.

Before DAVIS, P.J., and BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

The State appeals the dismissal at the preliminary hearing of the counts in two separate informations alleging that James and Jeanne Redd abused or desecrated dead human bodies, third degree felonies, in violation of Utah Code Ann. § 76–9–704(1)(b) (1995). The appeals were consolidated. We affirm.

## FACTS

On January 6, 1996, a hiker witnessed several people digging in an area of San Juan County known to contain Anasazi ruins. He contacted the San Juan County Sheriff's office and told the office that he wished to speak to Officer Ben Naranjo "as soon as possible." When Naranjo arrived at the witness's home, he told Naranjo that he saw people digging at the site on that day and on several previous occasions. Erv Guymon, who was at the witness's home when Naranjo arrived and who owned property near the site described by the witness, told Naranjo "if [the digging] was on his property, nobody had permission at that time to be on [it]."

Naranjo, accompanied by the witness, then drove to the dig site. On their way, they noticed a truck with three children standing nearby. Naranjo asked the children if they knew of any digging at the nearby site. The children answered that there was digging, but that they had permission from Guymon to be on the property.

At about the same time, defendants, James and Jeanne Redd (the Redds), ran to Naranjo from the dig site, which was up a hill away from Naranjo and the children. The Redds asked Naranjo why he was there. After

Naranjo explained that a witness had observed them digging, the Redds asserted that they had Guymon's permission to dig at the site. During the conversation, a local newspaper editor arrived. Because of Mr. Redd's agitation over the editor's presence and the Redds' claim that they had Guymon's permission to be there, Naranjo decided to "just back off and go talk to Mr. Guymon." Guymon later recalled giving the Redds permission to be on his property but did not recall giving them permission to dig at the site.

The next day, Naranjo, another county sheriff deputy, and James Ragsdale, a law enforcement officer with the Bureau of Land Management (BLM), returned to the site to take pictures but did not collect any other evidence. At that time Ragsdale observed that there had been recent digging at the site.

On January 10, 1996, Ragsdale returned to the dig site with the San Juan County surveyor, a BLM soil specialist, San Juan County Sheriff Mike Lacy, and Dale Davidson, a BLM archaeologist. Davidson described the site as follows:

> The site itself consisted of a building that was about 30 feet across and sort of a north-to-south access with a courtyard in front and a kiva[1] to the south, and east of that, a midden area[2] and there was a large rectangular hole that had been— been dug into that midden, and resulting back dirt from that excavation was piled in the immediate vicinity of the ... hole.

The county surveyor determined that, although incorrectly noted as private land on a BLM map, the site was on state land. Davidson believed the digging was very recent and found thirteen to fifteen bones he "felt very strongly" were human. The bones were found "generally within very close prox-imity to those areas of ... dirt that had been recently screened, as if they had been on [the] screen ... and ... [then] tossed out."

Based on the investigation, the Redds were both charged with one count of abuse or desecration of a dead human body, a third degree felony, in violation of Utah Code Ann. § 76–9–704(1)(b) (1995)[3] and one count of trespassing on trust land, a class B misdemeanor, in violation of Utah Code Ann. § 53C–2–301(1)(f) (Supp.1997).[4] After a preliminary hearing on the matter, the lower court made the following oral findings and conclusions:

> From the evidence that's been presented here, I find that there is probable cause to believe that the defendant[ ]s did trespass on state trust lands, I also find probable cause to believe that they ... did disturb these—or even disinterred these remains. Whether that constitutes a criminal offense of desecration of a corpse, or abuse or desecration of a dead human body is what's addressed in the defendant's [m]emorandum[,] and these are remains that presumably are a thousand years old. I guess there's one school of thought that it doesn't matter how old the remains are, they're still human remains, and they need to be protected from being disturbed. Under that theory, if these had been on Mr. Guymon's property they would have been—it would not [have] been ... permissible to disturb them, and I'm thinking of all the farmers that have run their plows across lands and ... disturbed human remains. [However,] these are human remains that are entitled to respect, these ... people probably have descendants living today who care that they be treated with respect. The [descendants] of these people probably are the Pueblo Indians, if ... any descendants exist.

---

1. We understand a kiva to be a circular ceremonial structure usually located partially underground.

2. We understand a midden area to be an area where refuse or garbage is piled. Although the State moved that we take judicial notice that midden areas are known as Anasazi burial sites, we decline to do so. See infra note 7.

3. Although the informations charge the Redds with a violation of section 76–9–704(1) generally, it cites only factual contentions supporting a charge under section 76–9–704(1)(b).

4. We cite to the recently amended statute because, as it relates to this case, there is no difference between the statute as amended and the previous codification.

The other school of thought is, "Hey wait a minute, you know, there's a rule of reason that has to apply here, we're talking about disturbing human remains that have been buried in a place that's been set aside for the preserving of human remains, the cemetery[,] and there has to be a certain point when we can't ... hold people guilty ... of a Third Degree Felony because they ... don't avoid all of these human remains[,] and ... these remains are scattered all over this part of the country. I presume all over the world this situation exists.

And I don't know—really I don't know the answer to the question. There's these two philosophies, both of them entitled to respect. But, I have to decide as a magistrate, whether I will bind over and hold ... the Redd[ ]s for trial on these charges....

And this is a statute that as you read the statute in it[ ]s entirety, I think ... clearly evidences a legislative intent to keep the people from digging around in graveyards. You [must] report the body, you can't disinter it or, you can't dismember it or damage it. You can't commit any of these unspeakable acts on a dead body....

And so ... I am not going to bind over on the felony charges, I will dismiss those charges and while indicating as I have my factual findings are that they did disinter these remains. And if that amounts to this offense, then this case should be sent back for trial, and I should be ... reversed and ordered to bind the defendant[ ]s over.

The lower court then entered written findings of fact, conclusions of law, and an order. The findings and order provided:

1. Probable cause is found as to the trespass count.

2. The state presented evidence that defendants, in the process of searching for arch[a]eological artifacts, disturbed human bones and bone fragments. The state has not shown that the bones were in their original place of repose before they were disturbed by defendants.

3. The legislature has addressed the excavation of artifacts and human remains in Title 9, Chapter[s] 8 and 9, *Utah Code* (1996), and carefully avoided regulating, without the owner's consent, the excavation of artifacts *and* human remains on private property.

4. The section under which defendants are charged with desecration of a corpse does not define "burial[,"] "interment" or "dead body[."]

5. Title 9, Chapter 9, *Utah Code* (1996) refers to portions of an individual that are found in archaeological sites as "remains[."]

6. Reading Section 76–9–704 and Title 9, Chapters 8[and] 9 together, the court concludes that in the eyes of the legislature, some time after a person is buried and one thousand years later, a "dead body" becomes "remains[."]

7. The statute clearly evidences a legislative intent to avoid regulation of private excavation of archaeological sites on private land unless the owner has consented to regulation.

8. The interpretation argued by the state in this case would extend Section 76–9–704 to all private lands in Utah, contrary to legislative intent, and make it a felony for private persons to disturb one thousand year old remains on their own lands.

9. With the consent of defendants, the misdemeanor trespass is held in abeyance for six months, for a status hearing as to the felony, which this Court refuses to bind over for trial for the reasons herein stated.

The lower court then ordered that the charge of abuse or desecration of a dead human body be dismissed.

The State filed this appeal.

### ISSUE

The sole issue for review is whether the lower court erred when it dismissed at the preliminary hearing the charges against the Redds for abuse or desecration of a dead human body.

### ANALYSIS

Although a lower court "may enter findings of fact and conclusions of law ...,

the ultimate decision of whether to bind a defendant over for trial presents a question of law which we review de novo without deference." *State v. Jaeger,* 896 P.2d 42, 44 (Utah Ct.App.1995) (citations omitted); *accord State v. Wodskow,* 896 P.2d 29, 31 (Utah Ct.App.1995). Although the review of a bind over decision is based upon a correctness standard, "[the reviewing court] should give some deference to a magistrate's factual findings when the issues of credibility and the demeanor of the witnesses are important to finding probable cause." *Wodskow,* 896 P.2d at 32.

■ The State charged the Redds under Utah Code Ann. § 76-9-704(1)(b) (1995) with "intentionally and unlawfully ... disinter[ring] a buried or otherwise interred dead body, without authority of a court order." To prove a prima facie case under this subsection, the State must prove three elements.

■ First, the State must show that the dead body involved in the crime was "buried or otherwise interred." In interpreting a statute we " 'give the words their usual and accepted meaning.' " *Gull Labs., Inc. v. Utah State Tax Comm'n,* 936 P.2d 1082, 1084 (Utah Ct.App.1997) (citation omitted). When a statute fails to define a word, "we rely on the dictionary to divine the 'usual meaning.' " *Id.* at 1084 (citing *Morton Int'l, Inc. v. Auditing Div. of Utah Tax Comm'n,* 814 P.2d 581, 590 (Utah 1991)). The statute involved in this case does not define the word "inter." Accordingly, we look to dictionaries for assistance. *Webster's Third New International Dictionary* 1176 (1986) defines "inter" to mean "to deposit (a dead body) in the earth or in a grave or tomb." Similarly, *American Heritage Dictionary* 669 (2d ed.1985) defines "inter" as "[t]o place in a grave or a tomb." A review of these definitions indicates that the usual meaning of "inter" connotes the intentional placement of a dead body into a place designated for its repose. Consequently, when the statute requires that there be a disinterment of a "buried or otherwise interred dead body," it requires that the dead body at issue be shown to have been placed in a location designated for its repose. Although in some cases it may be difficult to prove that a dead body was placed with the

purpose of interring it, such as when the bodies or grave sites are ancient and unmarked, when a body is removed from a cemetery, clearly marked grave site, or from a burial mound, there is clear evidence that the body was placed in the site precisely for the purpose contemplated by this requirement of the statute.

■ Second, the State must show that the defendant disinterred the body. Again, because the statute fails to define the term "disinter," we look to the dictionary definition to find its usual and accepted meaning. "Disinter" has been defined to mean "to take out of the grave or tomb[,] to dig up[,] EXHUME," *Webster's Third New Int'l Dictionary* 650 (1986), and as "[t]o exhume, unbury, take out of the grave," *Black's Law Dictionary* 468 (6th ed.1990). Thus, the usual meaning of disinter connotes some removal of a body from a place of interment, rest, or repose. Although the Redds contend that disinterment means removal from the place of *original* repose, the usual meaning of the term clearly does not place such a restriction on the word. The statute requires only that a defendant unearth or uncover a dead body and remove it from the place of interment.

Finally, the State must also prove that the defendant acted intentionally when he or she disinterred the interred dead body.

■ The State apparently does not agree that the first element is independent of the second. It argues that the lower court properly concluded that probable cause existed as to all the factual elements under this subsection when the court simply noted that the bones and bone fragments had been "disinterred." However, "[w]e ... assume the Legislature carefully and advisedly chose the statute's words and phrases." *DeLand v. Uintah County,* 945 P.2d 172, 174 (Utah Ct. App.1997). Additionally, we adhere to the principle that

[a] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine

interpretation to the one section to be construed.... [W]hen interpreting a statute all parts must be construed together without according undue importance to a single or isolated portion.

2A Norman J. Singer, *Sutherland Statutory Construction* § 46.05, at 103 (5th ed.1992) (footnotes omitted); *see Nixon v. Salt Lake City Corp.*, 898 P.2d 265, 268 (Utah 1995) ("[W]e note that an equally important rule of statutory construction is that a statute should be construed as a whole, with all of its provisions construed to be harmonious with each other and with the overall legislative objective of the statute."); *Gull Labs.*, 936 P.2d at 1085 (construing word's dictionary definition "in harmony with the general theme of the other subsections"); *State v. Scieszka*, 897 P.2d 1224, 1227 (Utah Ct.App.1995) (stating "a fundamental rule of statutory interpretation requires that a statute 'be looked at in its entirety and in accordance with the purpose which was sought to be accomplished' " (citation omitted)). Thus, any interpretation of statutory language that would nullify other statutory provisions is improper. *See Downey State Bank v. Major–Blakeney Corp.*, 578 P.2d 1286, 1288 (Utah 1978) (finding improper interpretation of statutory language that "would make ... phrases ... surplusage and meaningless"); *Ferro v. Utah Dep't of Commerce*, 828 P.2d 507, 513–14 (Utah Ct.App.1992) (finding proposed interpretation of statute improper because it would "impermissibly render [a statutory] provision a complete nullity").

■ If we were to interpret section 76–9–704(1)(b) to include the removal of any dead body without reference to whether it was interred, we would clearly violate these canons of statutory construction. We presume

that when the Legislature chose the terms "disinter" and "inter" in its prohibitions, it intended to use both terms as they are normally understood. Accordingly, we must conclude that the Legislature intended this subsection to prohibit the disinterment only of dead bodies shown to have been intentionally deposited in a place of repose. Further, any interpretation that would eliminate the interment requirement would render the language of subsection 76–9–704(1)(a), which specifically prohibits the removal or destruction of *any* dead body, mere surplusage. *See* Utah Code Ann. § 76–9–704(1)(a) (1995) (prohibiting "intentionally and unlawfully ... remov[ing] ... or destroy[ing] a dead body or any part of it").

We now turn our attention to the Redds' arguments. They contend that the lower court made a factual finding in paragraph two of its written order that the Redds did not disinter a dead body. Thus, the Redds argue that we are bound by that finding and cannot look to the lower court's oral decision to contradict that finding. We note first that we disagree with the characterization that paragraph two declares the State did not prove disinterment.[5] We conclude that the written order is at best ambiguous and that the lower court's oral statements make clear that the lower court concluded that probable cause as to the second element, disinterment, had been met. Nonetheless, as discussed above, the lower court's statements reflect a legal conclusion that is not entitled to deference.

■ However, even viewing the evidence in the light most favorable to the prosecution,[6] there was no evidence present-

---

5. Although the Redds claim that paragraph two of the written findings and order conclusively determined there was no disinterment because it declared that the State had not shown that the bones were in their *original* place of repose, paragraph two is ambiguous as it relates to the question of disinterment. Since disinterment does not depend upon evidence that a body was in its original place of repose, and paragraph two states that the bones were "disturbed," it is far from clear to us that the lower court concluded that the bones had not been disinterred.

6. Preliminary hearings are adversarial proceedings in which the prosecution must present

sufficient evidence to establish that "the crime charged has been committed and that the defendant has committed it." "The prosecution is not required to introduce enough evidence to establish the defendant's guilt beyond a reasonable doubt, but must present a quantum of evidence sufficient to warrant submission of the case to the trier of fact." In making a determination as to probable cause, the magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution. Moreover, "[u]nless the evidence is wholly lacking and incapable of reasonable inference to prove

ed at the preliminary hearing which would support the first required element that the bones and bone fragments involved in this case had been interred. The evidence and any inferences from the evidence presented at the preliminary hearing show only that the bones were unearthed from a midden area at an ancient dwelling site.[7] The State called no witnesses, expert or otherwise, to establish that these bones were intentionally deposited in the earth in a place of repose. Although in other cases an inference of interment might arise where bones are found in the ground, such as when bones are found along with metal hinges similar to those found on coffins or where the bones are found in a place known to be used for burial of bodies, the sole fact that bones are underground when found does not raise a reasonable inference that the bones were *intentionally deposited* in the earth for the purpose of placing them in repose. The State must show more to raise such an inference. Thus, in this case, the State failed to present a quantum of evidence sufficient to submit the case to a trier of fact on an essential element of the crime charged. Accordingly, we af-

firm the lower court's dismissal of the informations.[8]

## CONCLUSION

We conclude that the lower court correctly dismissed the informations. Because no evidence was presented at the preliminary hearing that the bones or bone fragments removed from the midden area were intentionally deposited there to place them in final repose, no evidence existed that could support a conclusion that there was probable cause that the bones were interred. Accordingly, we affirm the lower court's orders dismissing the charges of abuse or desecration of a dead human body.

DAVIS, P.J., and BILLINGS, J., concur.

---

some issue which supports the [prosecution's] claim," the magistrate should bind the defendant over for trial.

*State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995) (citations omitted).

7. During oral argument, the State urged us, pursuant to Rule 201 of the Utah Rules of Evidence, to take judicial notice of the fact that Anasazi cultures often used midden areas to bury their dead. However, the State never moved for the lower court to take judicial notice of this fact. In *Trimble Real Estate v. Monte Vista Ranch, Inc.*, 758 P.2d 451 (Utah Ct.App.1988), we held that, except in exceptional circumstances, we would normally refuse to take judicial notice of a fact when such a motion is made for the first time on appeal. *See id.* at 456. The State presented no "compelling 'countervailing principle'" that would overcome our normal reluctance to take judicial notice in these circumstances. *See id.* (discussing sufficiently compelling reasons to justify taking judicial notice when motion was made for first time on appeal). Because we can see no exceptional circumstance justifying a departure from our normal reservation, and because we otherwise conclude that this type of fact is not one normally subject to judicial notice—it certainly is not a "generally known" fact nor one

"capable of accurate and ready determination"— we decline to take judicial notice as requested by the State.

8. Because we have concluded that the evidence presented at the preliminary hearing did not support a bind over on a charge brought pursuant to section 76–9–704(1)(b), we need not consider whether bones and bone fragments unconnected to and not identifiable as a dead body can be considered a "dead body" under the statute. We also need not consider the related argument that the statute does not apply to the recovery of ancient dead bodies, i.e., that sufficiently old bodies are not "dead bodies" but "remains," the recovery of which are governed by other statutes, *see, e.g.,* Utah Code Ann. §§ 9–8–301 to –307 (1996 & Supp.1997) (Utah Antiquities Act); *id.* §§ 9–9–401 to –406 (Native American Grave Protection and Repatriation Act).

We note that, even though the lower court relied on its statutory interpretation of the term "dead body" to dismiss the information, "[i]t is well settled that an appellate court may affirm a lower court's ruling on any proper grounds, even though the lower court relied on some other ground." *DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995).