2000 UT App 372

**HERCULES INCORPORATED,**
**Petitioner,**

v.

**UTAH STATE TAX COMMISSION,**
**Respondent.**

No. 20000105–CA.

Court of Appeals of Utah.

Dec. 21, 2000.

Rehearing Denied April 18, 2001.

Kent B. Alderman, Maxwell A. Miller, and Randy M. Grimshaw, Salt Lake City, for Petitioner.

Jan Graham and Mark E. Wainwright, Salt Lake City, for Respondent.

Before Judges BILLINGS, ORME, and THORNE.

### OPINION

BILLINGS, Judge:

¶ 1 Hercules Incorporated (Hercules) appeals a final decision by the Utah State Tax Commission (Commission) imposing a sales tax on Hercules for nitrogen gas it purchased and used in manufacturing graphite fiber. We reverse.

### BACKGROUND

¶ 2 Hercules purchased nitrogen gas which it used in manufacturing graphite fiber.[1] The nitrogen gas is not used as a fuel in the manufacturing process and is not an ingredient in the product, but rather provides an atmosphere that prevents the carbon, the basic ingredient of the graphite fibers, from being consumed during the high-temperature manufacturing process.

---

1. Hercules sells the graphite fiber for applications requiring high strength, lightweight material, for use primarily in the aerospace industry.

¶3 On March 30, 1998, the Auditing Division of the Utah State Tax Commission issued Hercules a Statutory Notice of Deficiency. The deficiency assessment was for Utah sales and use taxes in the amount of $522,131.52 covering the period January 1, 1994 to December 31, 1996.

¶4 Hercules conceded liability on all items in the deficiency assessment except the taxability of its purchases of nitrogen gas used in its graphite fiber manufacturing process. Hercules argued that its purchase of nitrogen gas was excluded from taxation because, although the Utah tax code taxes purchases of "gas, electricity, heat, coal, fuel oil, or other fuels" for *commercial or residential* use, *see* Utah Code Ann. § 59–12–103(1)(c) (1995), Hercules puts the nitrogen gas to *industrial* use and thus it is not taxable.

¶5 Following a formal adjudication, the Commission concluded the meaning of "gas" in section 59–12–103(1)(c) does not include nitrogen gas. Accordingly, the Commission concluded that Hercules' purchases of nitrogen gas were taxable as retail sales of tangible personal property. Hercules appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶6 At issue is whether the term "gas" under section 59–12–103 includes nitrogen gas. The Commission's interpretation of the tax code is a question of law, *see Cache County v. State Tax Comm'n*, 922 P.2d 758, 763 (Utah 1996), accordingly, we grant the Commission's interpretation no deference. *See id.; see also* Utah Code Ann. § 59–1–610(1)(b) (1996).

**2.** Hercules additionally argues that a historical analysis of the tax code shows that the legislature means more than "natural gas" when it uses the term "gas." Hercules notes that a 1937 statute taxing payments made to *"gas,* electric, and heat corporations" specifically incorporated an existing provision defining "gas plant." *See* 1937 Utah Laws 111 at § 1 (emphasis added). That provision defined "gas plant" as "all real estate and fixtures and personal property owned, controlled, operated or managed in connection with or to facilitate the production, generation, transmission, delivery or furnishing of *gas (natural or manufactured)* for light, heat or power." Utah Rev.Stat. § 76–2–1(16) (1933) (emphasis added). Hercules argues that this provision was also incorporated by the 1943 forerunner to section 59–12–103(1)(c) (1996).

## ANALYSIS

## MEANING OF "GAS" IN TAX CODE

■ ¶7 Hercules argues that its purchases of nitrogen gas fall under Utah Code Ann. §§ 59–12–103(1)(c) and (d) (1996). Sections 59–12–103(1)(c) and (d) impose a tax on sales of *"gas,* electricity, heat, coal, fuel oil, *or other fuels* sold for *residential* use," *id.* § 59–12–103(1)(c) (emphasis added), or *"commercial* use," *id.* § 59–12–103(1)(d) (emphasis added). Hercules argues: (1) nitrogen is a gas; (2) sales of gas are only taxed if the gas is used residentially or commercially; (3) Hercules uses the gas industrially; and (4) therefore the sales are not taxable.[2]

¶8 The Commission concedes that if "gas" in the subject taxing statute includes nitrogen gas then Hercules' position is correct. However, the Commission argues that "gas" as used in the statute was intended by the legislature to only include natural gas or at least only gas when used as a source of energy. Although the Commission's position is logical, it is not supported by our case law.[3]

■ ¶9 "[I]n construing any statute, we first examine the statute's plain language and resort to other methods of statutory interpretation, only if the language is ambiguous. Accordingly, we read the words of a statute literally ... and give the words their usual and accepted meaning." *Gull Lab., Inc. v. State Tax Comm'n*, 936 P.2d 1082, 1084 (Utah Ct.App.1997) (citations and internal quotations omitted). "When a statute fails to

**3.** We respectfully disagree with our able colleague in dissent when he states, "Hercules does not dispute the Commission's ruling under section 59–12–103(1)(a)," and that section 59–12–103(1)(c) is merely "peripheral." It is our reading of the record below and the briefs on appeal that both the Commission and Hercules agree that section 59–12–103(1)(c) controls as the more specific taxing statute. *See Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 882 P.2d 1143, 1146 (Utah 1994) (stating that when "two provisions address the same subject matter and one provision is general while the other is specific, the specific provision controls"). However, the Commission relied on the general retail sales taxing provision, section 59–12–103(1)(a), in its conclusion of law when it incorrectly concluded "gas" does not include nitrogen gas.

define a word, we rely on the dictionary to divine the 'usual meaning.' " *State v. Redd,* 954 P.2d 230, 234 (Utah Ct.App.1998) (quoting *Gull Lab.,* 936 P.2d at 1084).

¶ 10 Webster's Dictionary defines "gas" as "a fluid that has neither independent shape nor volume but tends to expand indefinitely." Webster's Third New International Dictionary 937 (1986). The dictionary meaning of "gas" is certainly broad enough to include nitrogen gas.[4]

¶ 11 The Commission also argues that the phrase in sections 59–12–103(1)(c) and (d) "or other fuels" modifies each term in the statute thus limiting gas to only gas used as a fuel. Again, this is a possible but unclear interpretation. This term "or other fuels" could also just as easily be read to modify only the term it follows, clarifying that "fuel oil" or other liquids used for fuel are subject to the statute.

¶ 12 Finally, and most important to our analysis, is our rule in taxation cases[5] that "if any doubt exists as to the meaning of the statute, 'our practice is to construe taxation statutes liberally in favor of the taxpayer, leaving it to the legislature to clarify an intent to be more restrictive if such intent exists.' " *Wasatch County Bd. of Equalization v. State Tax Comm'n,* 944 P.2d 370, 374 (Utah 1997) (quoting *Salt Lake County v. State Tax Comm'n,* 779 P.2d 1131, 1132 (Utah 1989)). Any intent to restrict the meaning of the term "gas" in the statute is not clear. Therefore, we construe the statute liberally in favor of the taxpayer, which leads us to conclude that the taxpayer, Hercules, should prevail.[6]

¶ 13 Indeed, our conclusion gains additional support from the fact that in 1996 the legislature amended Utah Code Ann. § 59–12–104 to specifically include the term "natural gas." *See* § 59–12–104(43) (1996).[7] This makes clear that now only sales of natural gas are exempt from taxation when used for manufacturing purposes.

Ordinarily, "the presumption [is] that an amendment is intended to change existing legal rights." An exception to this presumption exists when the amendment "was intended to clarify a preexisting intention." In this case, however, "we find no indication in the ... amendment or elsewhere that the amendment was intended to clarify a preexisting intention." If anything, this legislative change supports the proposition that the statute previously meant something different from what it now says. *Visitor Info. Ctr. Auth. of Grand County v. State Tax Comm'n,* 930 P.2d 1196, 1198 (Utah 1997) (quoting *Madsen v. Borthick,* 769 P.2d 245, 252 n. 11 (Utah 1988) (citing 1A Norman J. Singer, Sutherland Statutory Construction § 22.30 (4th rev. ed.1985))); *see also State v. Amador,* 804 P.2d 1233, 1234 (Utah Ct.App.1990) (stating that "[e]very amendment not expressly characterized as a clarification carries the rebuttable presumption that it is intended to change existing legal rights and liabilities"). Thus, we presume that the statute, prior to amendment, did not exempt only natural gas from taxation to the exclusion of all other gases used for manufacturing purposes.[8]

¶ 14 Accordingly, we reverse and remand to the Commission for a re-calculation of taxes due by Hercules in harmony with our decision.

¶ 15 I CONCUR: GREGORY K. ORME, Judge.

---

4. The Commission concedes it has not treated oxygen gas as subject to taxation under the statute. It seems illogical that the Commission would tax nitrogen gas, as used by Hercules, and not oxygen gas in the same manner.

5. We conclude that section 59–12–103(1)(c) is a taxing provision which defines those taxed to include those who use "gas" for a "commercial" or "residential" purpose but not those that use gas for a noncommercial or industrial purpose.

6. The dissent's use of statutory construction to reach a different conclusion only supports our conclusion that the meaning of this statute is unclear and susceptible to several possible interpretations.

7. The amendment specifically exempts from taxation "sales of natural gas, electricity, heat, coal, fuel oil, or other fuels for industrial use." Utah Code Ann. § 59–12–104(43) (1996).

8. For example, "gas" could include methane found as natural gas or "manufactured" gases including methane, propane, butane, etc.

THORNE, Judge (dissenting):

¶ 16 I respectfully dissent from my colleagues' decision, reversing the Tax Commission's (Commission) ruling imposing a sales and use tax upon Hercules' purchase of nitrogen gas for use in its manufacturing process. I dissent for the following reasons: (1) the Commission levied a sales and use tax upon Hercules' purchase of nitrogen gas under *Utah Code Ann. § 59–12–103(1)(a)* and not section 59–12–103(1)(c); and (2) Hercules' argument that the term "gas" in section 59–12–103(1)(c) includes nitrogen gas contravenes the rules of statutory interpretation.

¶ 17 First, a review of the Commission's Findings of Fact, Conclusions of Law, and Final Decision clearly shows that the Commission levied the sales and use tax upon Hercules pursuant to Utah Code Ann. § 59–12–103(1)(a). The Commission's Conclusions of Law expressly state: "[Hercules'] purchases of the nitrogen gas for use it is [sic] graphite manufacturing process are subject to sales tax pursuant to Utah Code Ann. § 59–12–103(1)(a) *as they are retail sales of tangible personal property.*" (Emphasis added.). Hercules does not dispute the Commission's ruling under section 59–12–103(1)(a). Accordingly, I would avoid being drawn into Hercules' convoluted and peripheral argument, which fails to address the Commission's actual ruling.

¶ 18 Section 59–12–103(1)(a) (1995) states "[t]here is levied a tax on the purchaser for the amount paid or charged for the following: (a) retail sales of tangible personal property made within the state." *Id.* Utah Code Ann. § 59–12–102(18)(a)(ii) (1995) defines tangible personal property as "all tangible or corporeal things and *substances* which are dealt in or capable of being possessed or exchanged." *Id.* (emphasis added). Hercules fails to adequately explain why it is exempt from *this* taxation statute. Indeed, my review of the exemptions to section 59–12–103, contained in section 59–12–104, indicates that there may be no exemptions applicable to the present situation. Accordingly, the majority opinion need not have reached the merits of Hercules' peripheral argument that the term "gas" in section 59–12–103(1)(c) includes nitrogen gas. Based upon Hercules' failure to

directly address the Commission's ruling, I would affirm.

¶ 19 Second, Hercules' argument that the term "gas" in section 59–12–103(1)(c) includes nitrogen gas fails because it completely disregards the rules of statutory construction. To support its claim, Hercules argues that section 59–12–103 is a taxation statute that must be construed favorably to the taxpayer. *See SF Phosphates Ltd. v. Auditing Div. of Utah State Tax Comm'n,* 972 P.2d 384, 386 (Utah 1998); *Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980). The fundamental flaw in Hercules' argument is the notion that including nitrogen gas within the term "gas" is a favorable result to a taxpayer. In reality, Hercules' interpretation is not construed in favor of taxpayers, generally, because it increases the scope of items subject to taxation under this section.

¶ 20 Hercules then proceeds to argue that it is exempt from paying sales and use tax on its purchase of nitrogen gas under section 59–12–103(1)(c), as the use was for "noncommercial" purposes. Utah Code of Administrative Procedure R865–19–35S (1995), *exempts* sales and use tax upon "Gas, Electricity, Heat, Coal, Fuel Oils or Other Fuels" for "noncommercial purposes." *Id.* Unquestionably, Rule 865–19–35S is a tax exemption provision. *See SF Phosphates,* 972 P.2d at 386 (*"[t]he sales tax exemption for fuels* [contained in Rule 865–19–35S] must be narrowly construed" (emphasis added)). Exemption provisions must be construed in favor of the Commission. "Statutes which provide for exemptions should be strictly construed and one who so claims has the burden of showing his entitlement to the exemption." *Parson,* 617 P.2d at 398 (footnotes omitted).

¶ 21 Hercules' argument that "gas" under section 59–12–103(1)(c) includes nitrogen gas is an expansive, rather than a restrictive, reading of the provision and is in direct conflict with the rules of construction for exemption provisions. Instead, Hercules' argument, seeking such an expansive reading, must yield to the application of the rules of construction governing such provisions. Accordingly, Hercules does not meet its burden

to clearly demonstrate an entitlement to the exemption.

¶ 22 Finally, other rules of statutory construction require us to look "first to the plain language of the statute ... and [to] assume[ ] that each term was used advisedly by the [L]egislature." *Biddle v. Washington Terrace City*, 1999 UT 110, ¶ 14, 993 P.2d 875. Further, we interpret the " 'terms of a statute ... as a comprehensive whole and not in piecemeal fashion.' " *Business Aviation of S. Dakota, Inc. v. Medivest, Inc.*, 882 P.2d 662, 665 (Utah 1994) (quoting *Morton Int'l, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 814 P.2d 581, 591 (Utah 1991)).

¶ 23 A plain language reading of section 59–12–103(1)(c) reveals a list of fuels. As further support for such a conclusion, the Legislature chose to include the term "other fuels" in the list to ensure that other products in the same category are not omitted. The common characteristics of the list are that each item is capable of producing heat or energy, characteristics commonly used to define fuels. *See, e.g.,* Utah Code Admin.P. R865–19–35S (1995) (defining "other fuels" as "products which burn independently to produce heat or energy"). A plain language reading of section 59–12–103(1)(c) is more logical than the interpretation argued by Hercules, wherein terms in the same list are read in isolation and categorized by physical descriptors such as liquids, gases, or solids.

¶ 24 We must assume that the Legislature uses terms advisedly, *see Biddle*, 993 P.2d 875, 1999 UT 110 at ¶ 14, and the terms of statutes should be read as a whole. *See Business Aviation*, 882 P.2d at 665. In light of the various rules of construction—plain language, statutory terms used advisedly, statutes being read as a whole—and in addition to the special rules used for interpreting taxation statutes and exemption provisions, I conclude that the sale of nitrogen gas for noncommercial or industrial purposes is taxable.

¶ 25 I believe that it was the intent of the Legislature to exempt from taxation fuels, which produce heat or energy, used in the industrial process as a means of encouraging economic development. Nitrogen gas is not such a fuel. Accordingly, I would affirm the Commission's decision imposing sales and use tax on Hercules' purchase of nitrogen gas pursuant to section 59–12–103(1)(a), both upon the general application of section 59–12–103(1)(a) and the inapplicability of section 59–12–103(1)(c) and its exemption, Rule 865–19–35S.