**2016 UT App 142**

## THE UTAH COURT OF APPEALS

NASRULLA KHAN,
Petitioner,

*v.*

TAX COMMISSION,
Respondent.

Memorandum Decision
No. 20140583-CA
Filed July 8, 2016

Original Proceeding in this Court

Nasrulla Khan, Petitioner Pro Se

Sean D. Reyes and Brent A. Burnett, Attorneys
for Respondent

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in which JUDGE STEPHEN L. ROTH and SENIOR JUDGE PAMELA T. GREENWOOD concurred.[1]

TOOMEY, Judge:

¶1     Petitioner Nasrulla Khan disputes the Utah State Tax Commission's determination of his 2011 renter's refund. Although we disagree with the Commission's calculation in this case, we ultimately agree with its conclusion that Khan is entitled to a refund of $106. We therefore decline to disturb the Commission's determination.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    In December 2011, Khan applied for a renter's refund.[2] Renter's refunds are determined by an applicant's household income. *See* Utah Code Ann. § 59-2-1209 (LexisNexis Supp. 2010). According to the Renter Refund Schedule included in the application, if an applicant's household income is between $0 and $9,931 the applicant qualifies for an $865 refund. But if the applicant's household income is between $26,289 and $29,210 the schedule allows for a $106 refund.[3]

---

2. A renter's refund is a credit designed to "provide general property tax relief for certain persons who own or rent their places of residence" in order to "offset in part the general tax burden . . . [of] property tax." *See* Utah Code Ann. §§ 59-2-1201, 1209 (LexisNexis 2006 & Supp. 2010). The amount of the credit is based on the taxpayer's income.

3. Khan does not challenge the Renter Refund Schedule. The Renter Refund Schedule provides that an individual with an income between $26,289 and $29,210 may receive a 2.5% refund up to $106. But Utah Code section 59-2-1209 allows a 2.5% refund for individuals with an income between $24,247 and $26,941. Utah Code Ann. § 59-2-1209(1)(a). The Utah Code also allows the Commission to increase or decrease the household income eligibility amounts "by a percentage equal to the percentage difference between the consumer price index for the preceding calendar year and the consumer price index for the calendar year 2006." *Id.* § 59-2-1209(1)(b) (Supp. 2010). Because Khan does not challenge the discrepancy between the household income eligibility in the Renter Refund Schedule and the Utah Code, we presume the schedule reflects an adjustment the Commission made based on the consumer price index and we do not address it further.

¶3    Based on the information Khan reported on his 2010 federal individual income tax return, he had an adjusted gross income (AGI) of $10,619: the sum of $12 in interest, the taxable portion of an Individual Retirement Account (IRA) distribution of $9,371, $4,236 in pensions and annuities, and a capital loss deduction of $3,000. Not included in his AGI—but reported on his tax return—was $13,842 in Social Security benefits and the nontaxable portion of his traditional IRA distribution of $1,290. He also indicated on a Capital Gains and Losses Schedule D worksheet attached to his tax forms that he had $98,086 in capital losses carried forward from previous years.

¶4    On Khan's renter's refund application, he reported that his total household income was $0 and claimed a refund of $865 according to the Renter Refund Schedule. Khan argued that the $98,086 in loss carry forwards offset his AGI and all other nontaxable income.

¶5    The Taxpayer Services Division audited Khan's application and recalculated his imputed household income as $28,657, which included the $4,236 in pensions and annuities, $10,661 in IRA distributions (which included the taxable and nontaxable portions), $13,842 in Social Security payments, $12 in interest, and a $94 deduction. The Division sent Khan a notice of the adjustment, explaining that, because the IRA distributions were taxable, it considered his IRA distribution—a rollover from a traditional IRA to a Roth IRA—as income in its calculation. The notice also stated that Khan could not offset his AGI and other nontaxable income with the $98,086 in capital loss carry forwards; instead it "allowed a $94 capital . . . current year loss." The Division reduced Khan's refund accordingly.

¶6    Khan petitioned the Commission for a redetermination of the refund. An initial hearing was held in December 2012 where Khan presented two arguments disputing the income the Division imputed to him. First, he argued his IRA conversion

was not "income" because he did not physically receive the money. Second, Khan argued the Division erred in disallowing the $98,086 he claimed as loss carry forwards.

¶7 The Commission determined that Khan had "not shown he had $0 'household income' as defined by Utah Code section 59-2-1202 for purposes of determining a renter['s] refund," and although it determined the Division erroneously included the $1,290 nontaxable portion of Khan's IRA distributions in his income, the Commission ultimately concluded that Khan's properly calculated refund was $106. Khan requested a formal hearing, which was held November 5, 2013. At the formal hearing Khan made the same arguments and the Commission made the same determinations. Khan now seeks judicial review, again asserting the same arguments.

ISSUE AND STANDARD OF REVIEW

¶8 At issue is whether the Commission correctly determined Khan's household income for purposes of the renter's refund under Utah Code subsection 59-2-1202(6)(a)(ii). "The Commission's interpretation of the tax code is a question of law . . . ." *Hercules Inc. v. Tax Comm'n*, 2000 UT App 372, ¶ 6, 21 P.3d 231 (citation omitted). Accordingly, we "grant the commission no deference concerning its conclusions of law, applying a correction of error standard." Utah Code Ann. § 59-1-610 (LexisNexis Supp. 2008).

ANALYSIS

¶9 Khan first argues the Commission improperly included $9,371 in his household income because it was merely a conversion to a Roth IRA and was not physically received. For purposes of calculating the refund, the statute defines "income" as "the sum of (A) federal adjusted gross income . . . and (B) all

nontaxable income as defined in Subsection (6)(b)." *Id.* § 59-2-1202(6)(a)(i). According to subsection (6)(b), "nontaxable income" includes, among other things, "loss carry forwards claimed during the taxable year," pensions or annuities, "payments received under the Social Security Act," and "nontaxable interest." *Id.* § 59-2-1202(6)(b).

¶10    Because a taxpayer must pay tax on the conversion from an IRA to a Roth IRA, the taxable amount of the contribution is added to the taxpayer's AGI. *See* I.R.C. § 408A(d)(3)(A) (2010). So although the taxpayer does not physically receive the amount contributed to the Roth IRA, it "shall be included in gross income." *Id.*; *see also Bobrow v. C.I.R.*, 107 T.C.M. (CCH) 1110, 2014 WL 303234, at *6 (explaining that a rollover from an IRA to a Roth IRA "is fully includible in petitioner's gross income").[4]

---

4. We also note that restricting "household income" to income physically received, as Khan recommends, would be inconsistent with the statute. "[W]e seek to render all parts [of a statute] relevant and meaningful, and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative." *Hall v. Department of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958 (citation and internal quotation marks omitted). For purposes of calculating the renter's refund, household income includes the AGI and all other nontaxable income, except relief or aid provided by a public or private agency. Utah Code Ann. § 59-2-1202(6)(a) (Supp. 2008). Included as "nontaxable income" in subsection (6)(b) are at least two kinds of income not physically received by a claimant: loss carry forwards and depreciation. *Id.* § 59-2-1202(6)(b). Insisting that household income is restricted to what is physically received renders these two categories inoperative and superfluous and is thus an untenable interpretation.

¶11    According to Khan's tax return, his AGI for 2010 was $10,619: the sum of $12 in interest, $4,236 in pensions and annuities, and the $9,371 taxable amount of his IRA distributions, less $3,000 in claimed losses. Because the $9,371 IRA distribution amount is included in his AGI, by the statute's plain language it must be included in his income. Utah Code Ann. § 59-2-1202(6)(a)(i)(A) (defining income as the federal adjusted gross income and all nontaxable income). We therefore conclude the Commission did not err in including the $9,371 IRA distribution amount as household income for purposes of calculating Khan's renter's refund.

¶12    Khan next argues the Commission miscalculated his loss carry forwards. Specifically, he asserts that the term "loss carry forward" is undefined by the Utah Tax Code and thus should be "synonymous to IRS's 'capital loss carryover.'" Therefore, Khan argues, the Commission should have deducted the entire $98,086 that he reported as loss carry forwards.

¶13    "[I]n construing any statute, we first examine the statute's plain language and resort to other methods of statutory interpretation, only if the language is ambiguous. Accordingly, we read the words of a statute literally . . . and give the words their usual and accepted meaning." *Hercules Inc. v. Tax Comm'n*, 2000 UT App 372, ¶ 9, 21 P.3d 231 (alteration and omission in original) (citation and internal quotation marks omitted). "When a statute fails to define a word, we rely on the dictionary to divine the usual meaning." *Id.* (citation and internal quotation marks omitted).

¶14    Here, the term "loss carry forwards" is not defined by the Utah Tax Code, or the Commission, or the Internal Revenue Service. But according to Black's Law Dictionary, "loss carryforward" is synonymous with a loss "carryover." *Compare Loss carryforward*, Black's Law Dictionary (9th ed. 2009) (referring the reader to "carryover"), *with Carryover*, Black's Law

Dictionary (9th ed. 2009) (explaining that a carryover is a "deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in a later period" and is "[a]lso termed a *loss carryward*").

¶15 A case from the Court of Special Appeals of Maryland, *Baker v. Baker*, 109 A.3d 167 (Md. Ct. Spec. App. 2015), explains the deduction associated with loss carry forwards:

> [I]f an individual taxpayer generates a capital loss (i.e., the loss from the sale or exchange of any capital asset) in a given year, the taxpayer, to reduce a tax liability, may offset the loss against any capital gains from that year. If the taxpayer's aggregate losses exceed the capital gains in that year, he or she may also deduct up to $3,000.00 of the excess loss against ordinary income. The taxpayer may then "carry forward" any unused capital losses to the following year. In each future year in which that carried-forward loss remains, the taxpayer again may offset the loss against future capital gains, and against up to $3,000.00 of ordinary income, until all losses are exhausted or until the taxpayer dies.

*Id.* at 170 (citations omitted).

¶16 Accordingly, by its nature a capital loss can carry over, or carry forward, but the taxpayer may only claim up to $3,000 of the entire capital losses each year. *See id.* Subsection (6)(b) expressly states that nontaxable income includes "loss carry forwards *claimed* during the taxable year in which a claimant files for relief." Utah Code Ann. § 59-2-1202(6)(b)(ii) (LexisNexis Supp. 2008) (emphasis added). Thus, although we agree that loss carry forwards is synonymous with a loss carryover, Khan is mistaken in asserting he claimed $98,086 as his loss carry forwards for 2010. Rather, as indicated on his federal individual

tax return, he claimed $3,000 in losses for 2010, and the remaining amount of his capital loss carried over to the next year.

¶17    More importantly, the loss carry forwards is not a deduction that offsets Khan's income for the purposes of determining his renter's refund, but is instead added to his AGI to determine his household income. *See id.* § 59-2-1202(6)(a)(i). The Utah Code defines "income" for the refund as the "*sum* of (A) federal adjusted gross income . . . *and* (B) all nontaxable income as defined in Subsection (6)(b)." *Id.* (emphases added). Subsection (6)(b) defines "nontaxable income" to be "amounts excluded from adjusted gross income under the Internal Revenue Code," and expressly includes "loss carry forwards claimed during the taxable year." *Id.* § 59-2-1202(6)(b). This means that the $3,000 Khan claimed on his tax return as loss carry forwards is added to his $10,619 AGI, not subtracted from it. That the loss carry forwards is not a deduction, but is instead added to the AGI, is bolstered by the inclusion of Khan's Social Security payments; although they are not taxable and were not included in his AGI, the $13,842 in Social Security payments was added to his AGI to determine Khan's household income. Similarly, because it was excluded from his AGI under the Internal Revenue Code, the $1,290 nontaxable portion of his IRA conversion should also be added to his AGI in determining his household income.

¶18    The Commission determined that "Khan's household income was $27,367 . . . , [which] includes his $10,619 in adjusted gross income, $12 in interest, $4,236 from pension/annuities, $13,842 in social security, and a $94 short-term capital loss." On its face, the Commission's calculation appears incorrect; these smaller amounts do not add up to $27,367. Additionally, the $12 in interest and $4,236 in pensions and annuities was already included in Khan's AGI; the Commission should not have calculated them in Khan's income a second time. Further, the

Commission erroneously calculated Khan's loss carry forwards as $94, not the $3,000 he claimed.

¶19 Nevertheless, the Commission's error is harmless. Correctly calculated, Khan's household income still falls between $26,289 and $29,210 which entitles him to a refund of $106. Khan's correct household income should be $28,751, which is the sum of his $10,619 AGI, $13,842 in Social Security benefits, $1,290 in nontaxable IRA distributions, and $3,000 claimed as loss carry forwards. Thus, according to the Renter Refund Schedule, Khan's income qualifies him for a $106 refund.

## CONCLUSION

¶20 In sum, we determine that the Commission correctly included the IRA distribution amount in calculating Khan's income for purposes of the renter's refund. We also conclude that the Commission erred in calculating Khan's household income. But because his income correctly calculated still entitles him to a refund of $106 according to the Renter Refund Schedule, we conclude the Commission's error is harmless. We therefore decline to disturb the Commission's determination.

_____