2000 UT 78

### INDUSTRIAL COMMUNICATIONS, INC., Petitioner,

v.

### UTAH STATE TAX COMMISSION, Respondent.

No. 990701.

Supreme Court of Utah.

Sept. 29, 2000.

David J. Crapo, Eric T. Johnson, Salt Lake City, for petitioner.

Jan Graham, Att'y Gen., Susan L. Barnum, Asst. Att'y Gen., Salt Lake City, for respondent.

DURRANT, Justice:

¶ 1 Industrial Communications, Inc., petitions for review of a Utah State Tax Commission decision upholding an assessment of sales tax on one-way pager service that Industrial Communications provides to its clients. Before the Commission, Industrial Communications argued that the Sales and Use Tax Act's definition of telephone corporations providing telephone service applies only to two-way communications. The Commission rejected Industrial Communications' argument and upheld the assessment pursuant to a regulation it had promulgated in 1997, which specifically defines pager service as a telephone service subject to taxation. On appeal, Industrial Communications contends that the Commission's regulation exceeds the Commission's statutory authorization to tax telephone service provided by telephone corporations.

## BACKGROUND

¶ 2 The Commission issued a notice of assessment and sales tax deficiency to Industrial Communications on the charges it had collected from clients who purchased pager service. The notice covered a three year period running from January 1, 1995, to December 31, 1997. Industrial Communications petitioned for redetermination, arguing that one-way pager service is not a telephone service.

¶ 3 The question presented to the Commission was whether the one-way pager service provided by Industrial Communications was subject to taxation under Chapter 12 of Title 59 of the Utah Code, the Sales and Use Tax Act (hereinafter the "Sales Tax Act"). In its present form, the Sales Tax Act provides for the levy of a sales tax on the "amount paid ... to telephone corporations ... for ... (ii) intrastate telephone service." Utah Code Ann. § 59–12–103(1)(b). The Commission was thus required to interpret the statutory provision to determine whether Industrial Communications is a "telephone corporation" providing "telephone service."

¶ 4 The Commission recognized, however, that this question could not be answered by isolated reference to the present form of the statute. It examined both the statutory history of the Sales Tax Act, including recent amendments to that act, and the prior course of dealings between the Commission and Industrial Communications. Prior to 1983, Industrial Communications collected and paid sales tax on charges it collected for one-way pager service. At that time, the Sales Tax Act explicitly based its definition of "telephone corporation" upon that found in Title 54, the Public Utilities Title. Specifically, the taxing provision stated that a sales tax was levied on amounts paid for "telephone service" to "telephone ... corporations as defined by Section 54–2–1 [of the Public Utilities Title]." 1977 Utah Laws, ch. 220, § 1. Industrial Communications took the position that it was a regulated telephone corporation for purposes of its provision of one-way pager service under the Public Utilities Title. Accordingly, because of the definitional link between the Sales Tax Act and the Public Utilities Act, Industrial Communications assumed that it was also liable under the Sales Tax Act for collecting tax on its client transactions for one-way pager service.

¶ 5 In 1983, however, the Public Service Commission ruled that a business providing one-way pager service was not subject to its regulatory authority. Industrial Communications challenged this ruling, arguing that it was a "telephone corporation" for purposes of the Public Utilities Act. This court resolved that dispute in *Williams dba Industrial Communications v. Public Service Commission*, 754 P.2d 41, 51 (Utah 1988), in which we affirmed the Public Service Commission's ruling. In *Williams*, we construed the definition of "telephone corporation," for purposes of the Public Utilities Title, by reference to the service provided by that corporation. *See id.* at 50–51. We quoted with approval the Public Service Commission's finding that "[t]elephone service over land lines or radio waves is fundamentally the same service irrespective of the means of

transmission. But telephone service is a two-way service; paging service is one-way call notification." *Id.* at 51. Thus, following *Williams,* Industrial Communications' one-way pager service was not a telephone service, for purposes of the Public Utilities Act, and Industrial Communications was not a telephone corporation with respect to the one-way pager service it provided.

¶ 6 Industrial Communications stopped remitting sales tax for one-way pager service in April of 1984. In light of the explicit connection between the definition of telephone corporation in the Public Utilities Act and the Sales Tax Act, Industrial Communications took the position that its duty to pay sales tax was coextensive with its status as an entity regulated by the Public Service Commission. Although the Commission rendered no official decision on Industrial Communications' interpretation of the impact of *Williams* on the collection of sales tax, Commission officials responsible for enforcing the sales tax provisions acceded to Industrial Communications' interpretation. During the pendency of the petition in *Williams,* the Commission asserted a sales tax deficiency, but agreed to stay the deficiency pending the outcome. After *Williams* issued, the Commission did not seek to enforce the prior alleged deficiency, nor did it assert any subsequent deficiency until the date on which it issued the notice giving rise to this case.

¶ 7 In 1990, the Legislature amended the sales tax provision relating to telephone service in Utah Code Ann. § 59–12–103(1)(b). The 1990 amendment added the qualifier "intrastate" to the term "telephone service" and deleted the phrase "as defined by Section 54–2–1," with reference to the definition of "telephone corporation." *See* 1990 Utah Laws, ch. 22, § 1. Thus, the definition of "telephone corporation" in the Sales Tax Act is no longer explicitly dependent upon the corresponding definition of that term in the Public Utilities Act, as construed by *Williams.*

¶ 8 The Commission did not immediately respond to this statutory amendment and Industrial Communications continued to assume it was not required to remit sales tax on its one-way pager service. In September of 1996, however, the Commission signaled a potential reversal of its policy by issuing two advisory opinions indicating that pager service should be subject to sales tax. Neither opinion was directed to Industrial Communications, nor was it published as a bulletin. However, in 1997, the Commission formally adopted a regulation, Rule 865–19S–90,[1] which explicitly included pager service within its definition of "telephone service." The Commission thus formally reversed its tacit policy of exempting businesses providing one-way pager service from the duty to remit sales tax and, accordingly, issued the notice of assessment and deficiency provoking the instant dispute.

¶ 9 Upon hearing Industrial Communications' petition, the Commission issued its Findings of Fact, Conclusions of Law, and Final Decision on July 20, 1999. Because the Sales Tax Act does not currently define either "telephone corporation" or "telephone service," the Commission concluded that it had the statutory authority to promulgate a regulation that defined one-way pager service as a telephone service for sales tax purposes. The Commission thus rejected Industrial Communications' fundamental contention in its petition for review.

¶ 10 Nevertheless, the Commission concluded that an abatement was appropriate for a portion of the assessed period. Specifically, with respect to the period running from January 1, 1995, to September of 1996, the Commission held that "applicable law and rules were unchanged since the Tax Commission had abated its earlier 'pager services' sales tax deficiency assertion against [Industrial Communications] in response to the decision of the Supreme Court [in *Williams* ]."

---

1. The rule reads as follows:

   A. Definitions.

    . . .

    5. "Telephone service" means the transmission for hire of signs, signals, writings, images, sounds, messages, data, or other information of any nature by wire, cable, radio waves, microwaves, light waves, satellite, fiber optics, or any other method now in existence or that may be devised, and includes:

    . . .

    (d) pager services.

Utah Admin.Code R865–19S–90 (1999).

Similarly, although the Commission issued two advisory opinions indicating a possible change in policy in September of 1996, those opinions did not "materially change the circumstances described in the first period," because the opinions were not directed to Industrial Communications and they included the caveat that they were subject to change in the near future. For the period beginning with the adoption of the 1997 regulation, however, the Commission held it could properly impose sales tax on pager service. The Commission therefore upheld the assessment for the period thereafter. Industrial Communications now petitions for review of that decision.

## DISCUSSION

¶ 11 On Industrial Communications' petition for review, we "grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and ... [we] grant the commission no deference concerning its conclusions of law, applying a correction of error standard." Utah Code Ann. § 59–1–610(1) (1996); *see also Salt Lake City Southern R.R. Co. v. Tax Comm'n*, 1999 UT 90, ¶ 7, 987 P.2d 594. Because the issue presented for review concerns the correct statutory interpretation of Utah Code Ann. § 59–12–103, which is a question of law, we accord the Commission's interpretation no deference.

¶ 12 We look first to the plain language of the statute at issue. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998). Section 59–12–103(1) provides in pertinent part:

There is levied a tax on the purchaser for the amount paid or charged for the following:

...

(b) amount paid to common carriers or to telephone or telegraph corporations, whether the corporations are municipally or privately owned, for:

(i) all transportation;

(ii) intrastate telephone service; or

(iii) telegraph service.

There is no allegation or suggestion that either common carriers or telegraph corporations are entities that are liable for collecting sales tax on telephone service. Indeed, it is apparent that the provisions in subsection (b) are simply parallel indicators of the three subsequent subcategories of services listed. Common carriers are required to collect tax on sales of transportation service, and telegraph corporations are required to collect tax on sales of telegraph service. Therefore, the pertinent language with regard to the instant case designates a levy of a sales tax on the "amount paid ... to telephone ... corporations ... for ... (ii) intrastate telephone service."

¶ 13 Consequently, the Commission has authority pursuant to this provision to require telephone corporations to collect sales tax on telephone service. If Industrial Communications is not a telephone corporation providing telephone service, it is not subject to section 59–12–103(1)(b). Clearly, subsequent to *Williams* and prior to 1990, Industrial Communications could not be treated, under either the Public Utilities Title or the Sales Tax Act, as a telephone corporation providing telephone service with respect to its one-way paging service. Hence, the outcome of this case depends on the effect of the legislature's decision to remove the language "as defined by Section 54–2–1" from the Sales Tax Act's reference to telephone corporations.

¶ 14 With the statutory link in place, there was no opportunity for divergent definitions of telephone corporations providing telephone service depending on the regulatory or taxing context. One was first required to look to the definition found in the public utilities statute and then apply that same definition under the Sales Tax Act. One possible textual impact of the change would be to now allow some independent variation between the sales tax context and the public utilities context. The extent and nature of that variation, however, is open to debate. Not surprisingly, the parties offer differing perspectives based on fundamentally different assumptions about whether any substantive change was intended, and if so, its nature and scope.

¶ 15 On the one hand, Industrial Communications argues that the legislature intended only a technical, nonsubstantive change to the sales tax statute, or at most merely intended to prevent any future alterations to the scope of public utilities regulation of telephone corporations from having a parallel impact on sales tax liability. In this view, changes to the public utilities context need not impact the continuity and stability of the legislature's sales tax policies.

¶ 16 The Commission, on the other hand, argues that the legislature removed the link to the public utilities context for the independent or additional [2] purpose of allowing greater flexibility in how telephone corporations and telephone service are defined. Where before, no independent construction of the sales tax definition could be considered without first addressing the public utilities definition, there now would be a potential opportunity for divergent definitions of telephone corporations providing telephone service. If we assume policy-based reasons for defining telephone corporations providing telephone service differently, depending on the context, then independent definitions of the sales tax versions of "telephone corporation" and "telephone service" now would be possible, indeed encouraged. In short, the Commission's argument implies that the legislature intended to undo the effect of *Williams.*

¶ 17 From a purely textual viewpoint, Industrial Communications' argument is stronger and is more consistent with the general rule that tax statutes and any ambiguities therein are to be construed liberally in favor of the taxpayer. *See Board of Equalization of Wasatch County v. Tax Comm'n,* 944 P.2d 370, 373–74 (Utah 1997). Mere removal of the link between the public utilities and sales tax statutes need not effectuate any particular change to either of them. Notably, the alteration gives no specific guidance on how to interpret either statute differently than before.

¶ 18 The Commission's argument also assumes that there are such substantial policy distinctions between the two acts that the definitions applicable in one context are functionally inapplicable in the other. The Commission's argument thus requires us to speculate that by removing the statutory link the legislature intended either (1) to specifically further the policy goals the Commission espouses by implicitly altering the prevailing sales tax definitions, or (2) to generally provide the Commission with discretion (that it did not previously enjoy under our holding in *Williams* ) to do the same.

¶ 19 The Commission's contention, speculative as it is, is not implausible. If the legislature had concluded that *Williams* had wrought an unintended or undesirable limiting effect on the Sales Tax Act or the Commission's powers, the first step toward remedying the problem would be to remove the link between the two acts. Nonetheless, given the legislature's continuing failure to provide any specific definitions of either telephone corporation or telephone service within the Sales Tax Act, merely removing the link to the Public Utilities Title seems an ambiguous and ineffective method of accomplishing the specific policy goals espoused by the Commission. Nor does the deletion of the statutory link necessarily indicate that the legislature was dissatisfied with the link's impact on the Commission's authority after *Williams.* Thus, at best, the Commission's argument raises a potential ambiguity regarding legislative intent. *See Visitor Info. Ctr. v. Tax Comm'n,* 930 P.2d 1196, 1197 (Utah 1997).

¶ 20 The recorded legislative intent refutes the Commission's interpretation. Senate Bill No. 17 of the 1990 session, which effected the pertinent changes here, included an informational section. That section stated as follows:

> It is the intent of the Legislature that the changes to the tax laws provided by this act be construed as a technical change only, with the sole purpose of recognizing in statute tax policy as it existed regarding

---

**2.** The Commission's view is not necessarily hostile to the notion that the legislature anticipated fluidity and change within the public utilities context; it simply maintains that the legislature

specifically intended to allow some degree of flexibility in the interpretation of the sales tax definition.

interstate retail long distance charges and carrier access charges upon the passage of Senate Joint Resolution 12 at the 1989 General Session.

*See* 1990 Utah Laws, ch. 22, § 3. Hence, the informational section pertaining to legislative intent bears out Industrial Communications' interpretation of the effect of the deletion of the statutory link. The change is described as a "technical change only," which was related to preserving, not altering, existing tax policy. Further, the expressed concern was focused not on the specific definitions of telephone corporation and intrastate telephone service, as those definitions related to the Commission's authority to require collection of sales tax, but rather on the effect of an earlier joint resolution pertaining to interstate retail long distance and carrier access charges.

¶ 21 We therefore conclude that the Commission incorrectly interpreted Utah Code Ann. § 59–12–103. Industrial Communications is not a "telephone corporation" providing "telephone service" for purposes of the Sales Tax Act, and the Commission does not have the authority to promulgate a regulation declaring otherwise. We reverse.

¶ 22 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM and Justice WILKINS concur in Justice DURRANT's opinion.