2006 UT 6

BEAVER COUNTY, Box Elder County, Cache County, Carbon County, Daggett County, Davis County, Duchesne County, Emery County, Garfield County, Grand County, Iron County, Juab County, Kane County, Millard County, Morgan County, Piute County, Rich County, Salt Lake County, San Juan County, Sanpete County, Sevier County, Summit County, Tooele County, Uintah County, Utah County, Wasatch County, Washington County, and Weber County, Petitioners,

v.

PROPERTY TAX DIVISION OF the UTAH STATE TAX COMMISSION, and PacifiCorp, Respondents.

Nos. 20040236, 20040241.

Supreme Court of Utah.

Jan. 24, 2006.

Bill Thomas Peters, David W. Scofield, Salt Lake City, for petitioners.

Mark L. Shurtleff, Att'y Gen., John C. McCarrey, Asst. Att'y Gen., Salt Lake City, for respondent Utah State Tax Commission.

David J. Crapo, Salt Lake City, for respondent PacifiCorp.

WILKINS, Associate Chief Justice:

¶ 1 This case is a cross-petition for a writ of review of the Utah State Tax Commission's determination that it could equitably toll the statutory period on issuing escaped property taxes to allow its Property Tax Division to issue an assessment for such taxes against PacifiCorp, a utility company, after the statutory period for such issuances had expired; that the Utah State Tax Division's assessment of unpaid taxes was incorrect and PacifiCorp actually owed nothing; and that PacifiCorp was time-barred from receiving a tax refund for over-paid taxes.

¶ 2 Twenty-eight Utah counties, as intervenors to the action, seek review of the Commission's second ruling. PacifiCorp seeks review of the first and third. We reverse the Commission's determination that the limitations period could be equitably tolled to preserve the issuance of a tax assessment. We accordingly vacate the Division's assessment of the escaped property tax for tax year 1997 because it was issued after the statutory period had expired. Since the determination of whether the limitations period could be equitably tolled is dispositive to this case, and we find that it could not, we dismiss the remaining issues as moot and do not address them.

## BACKGROUND

¶ 3 PacifiCorp is a utility company that holds property in the State of Utah. The

Property Tax Division (the "Division") of the Utah State Tax Commission (the "Commission") is charged under Utah Code section 59–2–201 (2004) with the responsibility of centrally assessing PacifiCorp's state property tax liability.

¶ 4 On May 1, 1997, the Division issued a notice of assessment of PacifiCorp's 1997 total taxable property in the amount of $2,674,851,530. On May 30, 1997, PacifiCorp appealed the Division's tax assessment for that year by filing a Petition for Redetermination of the 1997 Original Assessment. Twenty-eight Utah counties (the "Counties") that benefit from the tax revenue also filed a Petition for Redetermination of the 1997 assessment. Both PacifiCorp and the Counties subsequently withdrew their petitions without comment, and the Commission accordingly dismissed their respective appeals. PacifiCorp then paid the tax amount indicated in the Original Assessment without protest.

¶ 5 During a deposition in July of 2000 on a 1999 tax assessment dispute, PacifiCorp, the Counties, and the Division discovered that PacifiCorp had erroneously overstated the amounts of its Deferred Income Tax ("DIT") and Investment Tax Credit ("IT") deductions in its annual report for 1997, 1998, and 1999.[1] The Division had relied on the schedule, including the erroneous DIT and IT figures, that PacifiCorp had provided in its annual report to determine the cost approach value in the Division's Original Assessment. The reporting errors could have potentially undervalued the property to the extent that some portion of the property could be considered to have escaped taxation altogether, in which case an escaped property tax assessment should then be issued against PacifiCorp.

¶ 6 An "escaped property" is any property that is subject to taxation and is

(i) inadvertently omitted from the tax rolls, assigned to the incorrect parcel, or assessed to the wrong taxpayer by the assessing authority;

(ii) undervalued or omitted from the tax rolls because of the failure of the taxpayer

to comply with the reporting requirements of this chapter; or

(iii) undervalued because of errors made by the assessing authority based upon incomplete or erroneous information furnished by the taxpayer.

Utah Code Ann. § 59–2–102(11)(a) (2004). On the other hand, property that is undervalued because the assessing authority used a different valuation methodology or applied the same methodology in a different manner is not an escaped property. Utah Code Ann. § 59–2–102(11)(b). If the assessing authority determines that a property qualifies as an escaped property, that authority can then issue an assessment of the escaped taxes. *Id.* § 59–2–217(1).

¶ 7 The 1999 valuation proceeded to a formal hearing, and the Commission issued its final order for that valuation in April of 2001. The Commission found that, despite the misreporting of the DIT and IT deductions in the 1999 Annual Property Tax Report, the property itself had not been undervalued nor, therefore, undertaxed. Thus, there was neither escaped property nor associated tax to be assessed. Instead, the Commission actually reduced the value of the property for that tax year from that determined in the Division's Original Assessment.

¶ 8 Despite the Commission's ruling that the overstated deductions did not undervalue the property and the company's tax liability for 1999, the Counties urged the Division to issue an escaped property tax for tax year 1997 under the theory that the misstatements did undervalue the 1997 Original Assessment of the property. After the Division failed to take action, the Counties filed a request with the Commission in July of 2001 to order the Division to issue an escaped property tax assessment against PacifiCorp for tax year 1997. Though the Commission ultimately determined in April of 2002 that the Counties lacked standing to compel the agency action it requested, the Commission itself nonetheless ordered the Division to "investigate the [Counties'] allegation of es-

---

1. There was no allegation of fraud on the part of PacifiCorp in the misreporting. All parties concede that the mistakes were made in good faith, and that PacifiCorp learned of the mistakes at the same time as the Division and the Counties.

caped property and issue an escaped property tax assessment, which may be a $0 assessment or some other number based on the investigation."

¶ 9 On May 1, 2002, the Counties sought a writ of review in this court of the Commission's ruling that they lacked standing to initiate the agency action. *Beaver County v. Property Tax Div. ex rel. PacifiCorp*, No. 20020346 (Utah May 1, 2002). On May 24, PacifiCorp moved to intervene in the Counties' appeal, and we granted the company's motion on July 15. On August 23, PacifiCorp filed a suggestion of mootness with us, arguing that the Commission's directive granted the very relief the Counties were now seeking from the state court.

¶ 10 On August 29, while the Counties' appeal was still pending, the Division issued the escaped property tax assessment against PacifiCorp for tax year 1997. The Commission, on September 5, then filed a response to PacifiCorp's suggestion of mootness, agreeing that the Counties' appeal was moot. *Beaver County*, No. 20020346. On November 18, we dismissed the Counties' appeal for mootness.

¶ 11 On September 25, before we had dismissed the Counties' case, PacifiCorp filed a petition for redetermination to challenge the Escaped Property Assessment the Division had issued against it in August. One of the arguments PacifiCorp made in support of its challenge was that the five-year statute of limitations contained in Utah Code section 59–2–217 barred the Division from trying to collect any escaped property tax for 1997.

¶ 12 The Commission ultimately concluded that, although the limitations period had run, principles of equity required that the period be equitably tolled to avoid prejudice to the Counties. The Commission went on to rule on the merits of the case, holding that the property had not been undervalued for tax year 1997 and that therefore no escaped property or associated tax was owed. Rather, the Commission found that the property had been overvalued and, had PacifiCorp petitioned for review of the valuation back in 1997, the company would have been entitled to a refund at that time. Because the company failed to exercise any of its rights to protest the assessment in the appropriate time period, however, it was no longer entitled to a refund on the overpaid tax.

¶ 13 The Counties and PacifiCorp both challenge certain rulings of the Commission. The Counties seek review of the Commission's determination that the property was not undervalued. PacifiCorp, on the other hand, asks us to reverse the Commission's determination that it could equitably toll the time period during which the Division must assess escaped property taxes and thereby preserve the untimely tax assessment against PacifiCorp. A finding that the limitations period could not be tolled would render the Division's tax assessment void and would dispose of the case in its entirety. In the event that we deny PacifiCorp's first request, PacifiCorp asks us to uphold the ruling that it owes no further tax dollars for 1997 and to overrule the Commission's determination that the company is no longer entitled to a refund. The Commission seeks to be affirmed on all its holdings.

¶ 14 We have jurisdiction pursuant to Utah Code sections 63–46b–14(1) (2004) and 78–2–2(3)(e)(ii) (2002).

## ANALYSIS

¶ 15 The issue dispositive to this case is whether the Commission erred in equitably tolling the lookback period on the 1997 Escaped Property Assessment. If equitable tolling was improper in this case, the escaped property tax assessment was untimely, and therefore void, and all further issues arising out of the assessment would thus be moot. We conclude that principles of equity do not apply to toll the limitations period in this case and vacate the tax assessment as untimely. Accordingly, we do not reach the other two issues raised and dismiss them as moot.

¶ 16 The application of a limitations period presents a question of law that we review for correctness, giving no deference to the Commission's determination. *Exxon–Mobil Corp. v. Utah State Tax Comm'n*, 2003 UT 53, ¶ 10, 86 P.3d 706; *see also* Utah Code Ann. §§ 59–1–610(1)(b), 59–2–217 (2004).

¶ 17 As a preliminary matter, we take the opportunity to clarify that this limitations period is not technically a statute of limitations, but rather a lookback statute. This clarification alters neither the analysis nor the outcome of this case, as all parties to this action agree that there is a limited time during which an assessing authority may reassess taxes for previous tax years based upon a theory of escaped property. We clarify the point merely for the sake of correctness.

¶ 18 We have explained that "a statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated." *Raithaus v. Saab Scandia of Am. Inc.*, 784 P.2d 1158, 1161 (Utah 1989). A lookback statute, on the other hand, "prescribes a period within which certain rights ... must be enforced" or lost. *Young v. United States*, 535 U.S. 43, 47, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002).

¶ 19 Here, the Division was not given a deadline within which it must file a lawsuit against a taxpaying entity; rather, it was given a time frame during which it must enforce its right to assess escaped property or lose that right forever. Whether we call it a statute of limitations or a lookback statute, the result in this case is the same, as principles of equity apply to both. *Id.* ("The three year lookback period is a limitations period subject to traditional principles of equitable tolling."). Thus, we turn to the governing statute, which reads:

> Any escaped property may be assessed by the original assessing authority at any time as far back as five years prior to the time of discovery, in which case the assessing authority shall enter the assessments on the tax rolls and follow the procedures established under Part 13 of this chapter.

Utah Code Ann. § 59–2–217(1) (2004).

¶ 20 The Commission determined that "discovery" has occurred "when a revaluation of the property shows that it has escaped taxation through under-assessment and the assessing authority issues a new assessment." The Commission concluded that it is not enough for the Division to simply realize that it has been provided with incomplete information, since errors in reporting do not always mean that a property has escaped assessment.

¶ 21 We do not reverse the Commission's interpretation of the lookback period. The reason for our holding on this point is simply that the Commission's interpretation conforms to the mandate that tax provisions be construed in favor of the taxpayer, whereas the Counties' proposed interpretation is highly unfavorable. *See Indus. Commc'ns, Inc., v. Utah State Tax Comm'n*, 2000 UT 78, ¶ 17, 12 P.3d 87 (noting the general rule that "tax statutes ... are to be construed liberally in favor of the taxpayer"); *accord Bd. of Equalization v. Utah State Tax Comm'n*, 944 P.2d 370, 373–74 (Utah 1997) (same).

¶ 22 Under the Counties' reading of the statute, "discovery" occurs only when the Division "first learned that there [is] incomplete or erroneous information supplied [by the taxpayer] on its annual property tax returns." In this case, the Counties argue, the Division "discovered" the escaped property on July 18, 2000, when it learned that there were reporting errors that may have led to an undervaluation, rather than two years later when it actually determined that the errors did lead to an undervaluation and issued an assessment against the company.

¶ 23 This interpretation provides the Division with substantially more flexibility in issuing escaped property assessments against taxpayers than would the Commission's reading of the statute. The Counties argue that the statute "provide[s] a five-year lookback period from the point of discovery, and the assessment for that five-year period could be made 'at any time.'" Essentially, then, according to the Counties, the Division need only discover the existence of reporting errors, which may or may not have led to an undervaluation, within five years of the original undervaluation. The Division then has unlimited time thereafter to actually issue an assessment for the undervalued property. Such an interpretation, as a substantive matter, is wholly contrary to the principle that we must construe tax provisions in favor of the taxpayer, and we therefore reject it.

■ ¶ 24 Thus, we adopt the Commission's interpretation of the statute and turn to the primary issue for disposition: whether the Commission acted properly in tolling the limitations period. Here, the Division did not issue an escaped property assessment against PacifiCorp for tax year 1997 until August 29, 2002. Under the Commission's interpretation of the statute, the Division failed by five months to discover the escaped property within the five-year time frame provided. The Commission conceded that had the suit been between PacifiCorp and the Division alone, it would have found the assessment itself to be untimely and the entire case moot. The Commission decided, however, to equitably toll the limitations period in the interests of the intervening Counties. The Commission reasoned that it would be unfair to subject the Counties—which had put forth every effort toward the timely issuance of the escaped property assessments—to the consequences of the Division's inertia in doing so.

¶ 25 In ruling that equitable principles applied in this case to toll the lookback statute, the Commission acknowledged that it knew of no cases "where 'equitable tolling' or 'exceptional circumstances' were applied in circumstances similar to the facts at hand." The Commission was referring to the fact that no Utah court had ever granted a petition for equitable tolling when the party against whom the limitations period applied was aware of the facts underlying the claim before the period expired, as the Division indisputably was in this case. *See, e.g., Estes v. Tibbs,* 1999 UT 52, ¶ 7 n. 4, 979 P.2d 823 (noting that Utah courts have typically required an initial showing that the appellant did not know nor could have known of the existence of a cause of action before they will consider whether to equitably toll the limitations period).

¶ 26 The Commission decided, however, that weighing the prejudice to the plaintiffs in not allowing the claim to proceed against the hardship to the defendants in having to defend against a stale claim yielded the result that the limitations period should be equitably tolled. The Commission reasoned that the Counties had done all within their power to urge the Division to issue a timely assessment, and the prejudice to them for the Division's failure to do so was "great," since the funds that could be secured through the action would have gone in some measure to the Counties.

¶ 27 The Commission reasoned that the company, on the other hand, would experience no additional hardship in defending the claim due to the additional five months since it knew that the Counties were requesting agency action well before the statutory time frame had expired, and that the issue of whether the Counties had the right to force the agency action it sought was pending before us.

¶ 28 We hold that the Commission acted improperly in equitably tolling the limitations period here because the circumstances of the case do not meet Utah's standards for applying the tolling doctrine. Not only were the Counties unable to show that the Division was prevented from issuing a timely assessment due to an excusable delay in discovering the underlying claim, but they were likewise unable to demonstrate that applying the limitations period would be irrational or unjust.

¶ 29 No Utah court has ever found occasion to equitably toll a limitations period when there has not first been a demonstration that the party seeking the tolling could invoke the discovery rule due to an excusable delay in discovering the underlying claim before the limitations period expired. *Estes,* 1999 UT 52, ¶ 7, 979 P.2d 823 (noting that "[e]very case in which we have addressed a 'special circumstances exception' has dealt with tolling a statute of limitations through application of the discovery rule"). This is not to say that no party may ever qualify for equitable relief in the absence of such a delay in discovering the claim, but rather to illustrate the high bar this court has required those seeking such extraordinary relief to hurdle.

■ ¶ 30 The discovery rule operates to " 'toll the period of limitations until the discovery of facts forming the basis for the cause of action,'" *Snow v. Rudd,* 2000 UT 20, ¶ 10, 998 P.2d 262 (internal quotation marks omitted), where the party can make

"an initial showing ... that [he] did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period." *Warren v. Provo City Corp.*, 838 P.2d 1125, 1129 (Utah 1992). Indeed, we have noted that in Utah "the principle of equitable tolling ... has been developed almost exclusively through application of the discovery rule." *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 65, 70 P.3d 1; *see, e.g., Snow*, 2000 UT 20, 998 P.2d 262; *Estes*, 1999 UT 52, 979 P.2d 823; *Burkholz v. Joyce*, 972 P.2d 1235 (Utah 1998); *Williams v. Howard*, 970 P.2d 1282 (Utah 1998); *Walker Drug Co. v. LaSal Oil Co.*, 902 P.2d 1229 (Utah 1995); *Sevy v. Security Title Co.*, 902 P.2d 629 (Utah 1995); *Warren*, 838 P.2d 1125.

¶ 31 Discovery of the underlying claim against PacifiCorp is simply not at issue here. The Counties had been attempting to force the Division to issue the escaped property assessment against the company over an extended time well within the limitations period. There is no dispute that the Division was aware of the facts underlying the tax claim against PacifiCorp two years before the lookback period expired. The Counties cannot argue that the Division's failure to assert its right to issue the assessment arose from an excusable defect of knowledge of the underlying claim. Thus, the only avenue for invoking equitable tolling that Utah courts have ever trod—i.e., by way of the discovery rule—is foreclosed to the Counties. Furthermore, the circumstances of this case are simply not sufficiently egregious to require tolling of the limitations period that bars action by the Division.

¶ 32 We have counseled that "[c]ourts should be cautious in tolling a statute of limitations; liberal tolling could potentially cause greater hardships than it would ultimately relieve." *Estes*, 1999 UT 52, ¶ 7, 979 P.2d 823. The doctrine of equitable tolling should not be used simply to rescue litigants who have inexcusably and unreasonably slept on their rights, but rather to prevent the expiration of claims to litigants who, through no fault of their own, have been unable to assert their rights within the limitations period. We have yet to hear a case in which a litigant was aware of his or her claims within the statutory time frame and nonetheless merited equitable tolling. We do not find such a party in the case before us.

¶ 33 In the only other case we have heard in which a party seeking equitable tolling admitted to having known of his claim within the limitations period, we held that the circumstances of the case were not sufficiently egregious to merit the extraordinary relief equitable tolling provides. *Estes*, 1999 UT 52, ¶ 7, 979 P.2d 823. There, Estes was imprisoned during the limitations period and lacked access to a lawyer and a law library. He claimed that his status was so exceptional and debilitating to asserting his claims in a timely way that the court should equitably toll the limitations period on his claims for the duration of his imprisonment. We disagreed, pointing out that he was able to file three pro se petitions from prison and could not reasonably explain why he would be unable to likewise file the actions foreclosed by the statute of limitations.

¶ 34 In this case, extraordinary circumstances simply do not exist to merit the extraordinary relief requested. The Counties' argument supporting the equitable tolling of the limitations period is simply that they would suffer the consequences of the Division's failure to timely file. While regrettable, such prejudice to the Counties does not constitute an irrational or unjust application of the limitations period.

¶ 35 The United States Supreme Court's analysis in *Young* does not dictate a distinct analysis. In *Young*, the Court carefully explained that, though the federal bankruptcy provision at issue was a lookback statute rather than a statute of limitations, the statute was nonetheless a limitations period, should be analyzed as such, and was subject to principles of equitable tolling. *Id.* at 50, 122 S.Ct. 1036. The Court went on to apply the equitable tolling doctrine as it exists at the federal level.

¶ 36 We have come to the same conclusion with regard to the lookback provision at issue here: though technically a lookback statute, it performs the same function as a statute of limitations and should be

treated accordingly, meriting the application of our equitable tolling doctrine. Nothing in *Young,* however, precludes states from developing their own variations of the equitable tolling doctrine in accordance with their own separate statutory schemes. Where a statute already exists to toll a limitations period, there is no need to invoke equitable principles to achieve the same end.

¶ 37 Utah has developed an extensive statutory scheme addressing the limitations of actions that renders statutory disability from protecting a claim irrelevant under our equitable tolling doctrine. *See* Utah Code Ann. §§ 78–12–1 to 78–12–48 (2002). Under section 78–12–41, "[w]hen the commencement of a cause of action is stayed by injunction or a statutory prohibition the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." Utah Code Ann. § 78–12–41. Thus, under Utah law, where a party is statutorily prevented from preserving its claim for a period of time, the limitations period on the party's claim is statutorily tolled for the duration of the stay. Principles of equitable tolling need not be invoked to effectuate the relief.

¶ 38 The federal bankruptcy provisions at issue in *Young* created a situation in which the IRS was statutorily prohibited from proceeding with its claims against the Youngs during the pendency of their Chapter 13 petition. *Young,* 535 U.S. at 50, 122 S.Ct. 1036. Because there was no provision in the bankruptcy code to toll the limitations period on claims that were statutorily stayed, the Court essentially utilized equitable principles to do so.

¶ 39 The Court's action closed a legal exception that would otherwise have allowed taxpayers to avoid paying a tax debt by filing for bankruptcy relief under one chapter of the bankruptcy code, thereby statutorily preventing the IRS from taking steps to protect its claim, and then waiting until the statutory period had expired on the IRS's claim before dismissing their petition. The Court refused to allow this result, holding that the lookback period in the bankruptcy code was equitably tolled during the pendency of the prior bank-

ruptcy petition because "the IRS was disabled from protecting its claim" during that period. *Id.* The Court found it unnecessary to determine whether the taxpayer had filed back-to-back bankruptcy petitions in a bad faith attempt to run down the limitations period or simply in a good faith use of bankruptcy laws. *Id.* The only salient point was that the IRS was disabled from pursuing its claim.

¶ 40 Because the federal bankruptcy code contains different provisions from Utah's statutory scheme addressing the limitations of actions, and does not have a provision tolling limitations periods during a statutorily-induced stay on a party's ability to protect his claim, the Court necessarily invoked equitable principles to remedy the problem. Here, on the other hand, the Division was not statutorily prohibited from pursuing its claim against PacifiCorp. It simply failed to act. And had the Division been statutorily prohibited from acting, Utah Code section 78–12–41 would serve to toll the limitations period until such time as the Division was statutorily permitted to pursue its claims.

¶ 41 Further, it is important to note that the Court in *Young* did not rule, as the concurrence argues, that "equitable tolling should not apply to the detriment of the taxpayer unless the taxpayer itself was responsible for causing the lookback period to expire" on the unpursued claim. Rather, it simply held that, where the IRS was statutorily disabled from protecting its claim during the lookback period, that period was tolled until such time as the IRS was legally permitted to pursue its claim. *Young,* 535 U.S. at 50–51, 122 S.Ct. 1036 ("[T]he IRS was disabled from protecting its claim during the pendency of the Chapter 13 petition, and this period of disability tolled the three-year lookback period when the Youngs filed their Chapter 7 petition.").

¶ 42 Thus, whether equitable tolling would be granted turned on whether the IRS was disabled from pursuing its claim, not on whether it was the taxpayer who bore the fault for any such disability. Because Utah already has a statute in place that tolls limitations periods where a party is disabled by injunction or statutory prohibition from pro-

tecting its claims, there is no reason to depart from the doctrine of equitable tolling that we have already developed and applied repeatedly to address such a circumstance.

 ¶ 43 Under our traditional principles of equitable tolling, the party seeking equitable tolling must first show that he was indeed disabled, usually through a defect of knowledge for which he could not be held responsible, from protecting his claim. We have never granted equitable tolling where a party has been unable to make such a showing. The fact that the Supreme Court was presented with a situation in which it was not imperfect knowledge, but rather a statutory prohibition, that prevented the IRS from pursuing its claims, and that there was no provision in the bankruptcy code analogous to Utah's statutory scheme that tolled limitations periods during periods of statutory stays on IRS action, does not cause us to modify our approach under our equitable tolling doctrine.

¶ 44 We have not said that a party may never obtain equitable relief from the expiration of a limitations period without first invoking the discovery rule. We may find occasion to grant equitable tolling when extraordinary circumstances warrant such relief. However, we simply see no need to depart from our traditional analysis under the facts of this case. In conformity with *Young,* we hold that the lookback period is a limitations period and is subject to principles of equitable tolling, just as a statute of limitations would be.

¶ 45 We have further concluded that the Division was in no way disabled from pursuing any claim against PacifiCorp, either through defect of knowledge, in which case the Division might have obtained equitable relief, or statutory prohibition, in which case the time period would have been statutorily tolled under Utah Code section 78–12–41. The Counties ask us to grant equitable tolling to the Division despite the fact that the Division unquestionably does not qualify for such relief. It is undisputed in this case that the Division was disabled neither by defect of knowledge nor statutory prohibition from protecting its claims. The Division had sufficient knowledge of the facts underlying this cause of action well before the limitations period on issuing an assessment for 1997 had run. The reporting errors came to light on July 18, 2000, two years before the lookback period expired. Further, no statute prohibited the Division from acting. The Division simply failed to timely issue the escaped property assessment, and thus lost the opportunity to do so later. The untimely assessment is void.

 ¶ 46 While this outcome may seem harsh in that it deprives the Counties of an opportunity to litigate any claim to the tax revenue, it is the necessary result of having limitations periods and the accompanying benefit of finality for which these statutes were designed. Limitations periods exist to extinguish claims not acted upon; thus, the loss of a claim occurs every time these time limits are enforced, and such a loss is simply not a reason to toll the statutory period absent application of the discovery rule. *See Estes,* 1999 UT 52, ¶¶ 6–7, 979 P.2d 823.

 ¶ 47 The Counties are acting as intervenors, not claimants, in this action. The proper focus of our equitable tolling analysis is upon the party who would actually be granted the equitable relief, not the party who may happen to benefit from that relief. Thus, we have focused upon whether the Division merited equitable tolling under our doctrine, as required by our prior decisions.

 ¶ 48 Because the Division failed to comply within the lookback period, the Division's authority to issue the assessment at all was extinguished when the limitations period expired. Extinguished along with that authority was any third-party claim to the revenue. That the Counties may be innocent parties suffering the consequences of the Division's failure to issue a timely assessment is of no legal consequence in this case and cannot operate to revive the expired lookback period.

¶ 49 Were we to hold otherwise, we would effectively eviscerate any meaningful limitations period for assessing escaped property taxes against taxpayers. The Division would be able to assess such taxes at any time, since a third-party beneficiary to the tax

dollars would be able to resuscitate expired claims in the name of fairness to those third parties. Taxpaying entities would never be given the repose and finality the limitations period was designed to provide. Such a rule defies the express terms of our equitable tolling doctrine and renders any limitations period on the Division's authority to tax companies and individuals for past property taxes utterly meaningless. Thus, we hold that the Commission improperly considered the limitations period here to be equitably tolled, thereby allowing the Division to issue a tax assessment after the statutory period for doing so had expired. Because we vacate the assessment, all remaining points on appeal concerning the merits of the Commission's order are now moot.

### CONCLUSION

¶ 50 The Commission misapplied the equitable tolling doctrine to toll the time period during which the Division may issue an assessment for escaped property taxes. The Division had enough information to be on alert that PacifiCorp may have had some escaped property and to issue an assessment for that property before the date on which its authority to do so expired. There were no extraordinary circumstances that would otherwise justify the extraordinary relief the Counties petition us to grant the Division. As such, equitable tolling cannot be used to prolong the time period during which the Division had authority to issue an additional assessment. The fact that the Counties suffer prejudice as a result does not serve to extend the period for the Division to act. The assessment was untimely and is thus of no effect. We vacate the escaped property tax assessment as untimely and therefore void, and dismiss all other issues arising out of the Commission's order as moot.

¶ 51 Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

DURHAM, Chief Justice, concurring in the result:

¶ 52 I concur with the result reached by the lead opinion. However, although I agree that the Commission erred in allowing equitable tolling in this case, I do not believe our application of equitable tolling principles to a lookback period should rely solely on the discovery rule.

¶ 53 The lead opinion concludes that the Commission's application of equitable tolling here was improper because the extraordinary circumstances required for its use are not present. I agree that this court has generally relied on the discovery rule when determining whether a statute of limitations may be tolled. *Russell Packard Dev. v. Carson,* 2005 UT 14, ¶ 21, 108 P.3d 741; *see also Grynberg v. Questar Pipeline Co.,* 2003 UT 8, ¶ 65, 70 P.3d 1 (observing that this court has relied "almost exclusively" on the discovery rule when addressing requests to equitably toll a statute of limitations). This reliance recognizes that, in a system where a statute of limitations controls a potential plaintiff's ability to file a cause of action, the discovery rule balances the equitable interests of the potential plaintiff and defendant where the potential plaintiff has "discover[ed][new] facts forming the basis for the cause of action." *Russell Packard Dev.,* 2005 UT 14, ¶¶ 21, 26, 108 P.3d 741 (internal quotation marks omitted).

¶ 54 Lookback provisions, however, are not concerned with a potential plaintiff's ability to bring suit; rather, as the lead opinion recognizes, they "prescribe[ ] a period within which certain rights ... may be enforced." *Young v. United States,* 535 U.S. 43, 47, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). In *Young,* the United States Supreme Court recognized that lookback periods "serve[ ] the same basic policies furthered by all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Id.* (internal quotation and alteration marks omitted). It thus concluded that lookback periods are "subject to traditional principles of equitable tolling." *Id.*

¶ 55 In applying equitable principles to the lookback period at issue in *Young,* the Court recognized that the balancing of interests in that context required an examination of *why* the party in question failed to enforce its rights within the statutorily-prescribed peri-

od. *Id.* at 50, 122 S.Ct. 1036. Broadly speaking, this is the same question addressed when a court applies the discovery rule in a statute of limitations context. In that context, the court presumes the primary reason a plaintiff would fail to file a claim earlier is that he was unaware of the facts necessary to file the claim. The court then goes further to determine whether the defendant was responsible for concealing these facts or whether other exceptional circumstances warrant tolling. *Russell Packard Dev.*, 2005 UT 14, ¶ 26, 108 P.3d 741. I do not believe, however, that the discovery rule adequately serves equitable principles in the context of the lookback period at issue here.

¶ 56 The analysis in *Young* is instructive on this point, although, as the lead opinion points out, it is not identical on its facts; it is nonetheless helpful in what I believe to be a similar situation. In *Young,* the Court faced a situation where, simply because of the structure of federal bankruptcy laws, the IRS could be prevented from enforcing its rights where a bankruptcy petitioner filed back-to-back Chapter 13 and Chapter 7 petitions. 535 U.S. at 50, 122 S.Ct. 1036. The Court concluded that the lookback period must be tolled on behalf of the IRS whenever a petitioner's back-to-back petitions would otherwise preclude the IRS's claim, "regardless of petitioners' intentions when filing" these petitions. *Id.* at 50–51, 122 S.Ct. 1036.

¶ 57 Here, the statutory scheme is similar to that reviewed in *Young* in that the Counties, who have a statutorily-recognized interest in recovering escaped property taxes,[1] may be prevented from receiving the benefit of such taxes whenever the Tax Division fails to perform the calculation required by the lookback period to determine whether previously-missing information resulted in undervaluation of a taxpayer's property. As in *Young,* the Counties in such a circumstance may be deprived of taxes they are entitled to

despite their own best efforts to protect their interests. Indeed, the Commission reasoned that such was the case here and granted equitable tolling on that basis.

¶ 58 However, the scheme at issue here is complicated by the status of the Counties as intervenors, rather than claimants, and the involvement of two additional parties—the Tax Division and PacifiCorp, the taxpayer, rather than only one. The interests of PacifiCorp must be given significant weight in any equitable assessment. The Commission concluded that "[t]he hardship for [PacifiCorp] in defending the escaped property assessment due to the additional five months [delay in issuing the assessment] could not be extensive, as [PacifiCorp] knew of the Intervening Counties Request for Agency Action well in advance of the expiration of the five year period." I believe, however, in accord with *Young,* that equitable tolling should not apply, to the detriment of the taxpayer, unless the taxpayer itself is responsible for causing the lookback period to expire before the Division makes an escaped property determination.[2]

¶ 59 Here, there is no indication in the record that any action by PacifiCorp caused the Division's delay in issuing its escaped property assessment. The Counties filed their request with the Commission for an escaped property assessment in July 2001. The Commission decided in April 2002 that the Counties lacked standing to make this request. The Counties appealed that decision to this court on May 1, 2002—the date of the lookback period's expiration. PacifiCorp's intervention in that proceeding thus occurred after the lookback period's expiration. The record reveals no other action by PacifiCorp that could be viewed as causing the Division's delay. Because the Division's untimely assessment does not appear to be the result of PacifiCorp's actions, I concur

---

1. *See, e.g.,* Utah Code Ann. § 59–1–602(2) (2004) ("A county whose tax revenues are affected by the decision being reviewed shall be allowed to be a party in interest in the proceeding before the court.").

2. The Counties suggest that the relevant inquiry is whether PacifiCorp caused an incorrect assessment in the first instance, "by providing incom-

plete or erroneous information." However, the legislature has already taken into account such initial errors in its definition of escaped property. *See* Utah Code Ann. § 59–2–102(11)(a). Thus, it would be inappropriate to take such factors into account again when conducting an equitable tolling analysis.

with the lead opinion's conclusion that equitable tolling was improperly granted.